# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTIES OF SUFFOLK AND NANTUCKET, MARCH TERM 1845, AT BOSTON.

#### PRESENT

Hon. LEMUEL SHAW, Chief Justice.
Hon. SAMUEL S. WILDE, ⎫
Hon. CHARLES A. DEWEY, ⎬ Justices.
Hon. SAMUEL HUBBARD, ⎭

---

## Henry Ingalls *vs.* Mark Bills & others.

Proprietors of coaches, who carry passengers for hire, are answerable to a passenger for an injury which happens by reason of any defect in a coach, which might have been discovered by the most careful and thorough examination, but not for an injury which happens by reason of a hidden defect which could not, upon such examination, have been discovered.

A passenger in a coach received an injury solely by reason of the breaking of one of the iron axletrees in which there was a very small flaw, entirely surrounded by sound iron one fourth of an inch thick, and which could not be discovered by the most careful examination externally. *Held,* that the proprietors of the coach were not answerable for the injury thus received.

If a passenger in a coach, by reason of a peril arising from an accident for which the proprietors thereof are liable, is in so dangerous a situation as to render his leaping from the coach an act of reasonable precaution, and he leaps therefrom and thereby breaks a limb, the proprietors are answerable to him in damages, though he might safely have retained his seat.

Assumpsit on an implied promise of the defendants, as coach proprietors and common carriers of passengers, to convey the plaintiff safely from Boston to Cambridge.

At the trial in the court of common pleas, before *Williams*, C. J. the plaintiff introduced evidence tending to prove that, on the 23d of September 1841, he and several other persons took outside seats, as passengers, on the top of the defendants' coach, to be conveyed from Boston to Cambridge; that on the way, in Court Street, in Boston, while proceeding at a moderate rate, and without coming in contact with any thing, ·or meeting any obstruction, the hind axletree of the coach broke, one of the hind wheels came off, and the coach settled down on one side, without being overset; that the plaintiff and some other outside passengers, being alarmed, jumped from the top of the coach upon the pavement; and that the plaintiff's left arm was thereby badly injured.

The defendants introduced evidence tending to prove that they had taken all possible care, and incurred extraordinary expense, in order that the said coach should be of the best materials and workmanship; that at the time of the accident, the coach, so far as could be discovered from the most careful inspection and examination externally, was strong, sound and sufficient for the journey; and that they had uniformly exercised the utmost vigilance and care to preserve and keep the same in a safe and roadworthy condition. But the evidence further tended to prove that there was an internal defect or flaw in the iron of the axletree, at the place where it was broken as aforesaid, about three eighths of an inch in length, and wide enough to insert the point of a fine needle or pin — which defect or flaw appeared to have arisen from the forging of the iron, and which might have been the cause of the said breaking; that the said defect was entirely surrounded by sound iron one quarter of an inch thick; and that the flaw or defect could not possibly have been discovered by inspection and examination externally.

Upon this evidence, the defendants moved the court to instruct the jury that it was the duty of the defendants to use all possible care in providing a good coach, in keeping the same in due repair, and in due examination into its condition; and if they took such care, and the· accident

happened, without any fault or negligence on their part, but by reason of a defect which they could not discover, then the verdict should be for them ; and that the plaintiff was not entitled to a verdict, unless the jury were of opinion that there was some degree of actual fault or negligence on the part of the defendants.

The judge declined giving these instructions, but submitted the evidence to the jury, with instructions that the defendants were bound by law, and by an implied promise on their part, to provide a coach not only apparently, but really, roadworthy ; that they were liable for any injury that might arise to a passenger from a defect in the original construction of the coach, although the imperfection was not visible and could not be discovered upon inspection and examination ; and that if the jury were satisfied, from the evidence, that the axletree broke in consequence of the original flaw or defect in the interior thereof, and the plaintiff was injured thereby, he was entitled to a verdict, although that flaw was invisible, and could not be discovered by inspection and examination externally.

The defendants further insisted, that if the plaintiff jumped from the coach without necessity, and that necessity brought upon him by them, they were not liable ; and that although a passenger might have jumped off without imprudence, still, if the plaintiff might have remained in his seat without imprudence, his jumping off was to be considered as his own act, and was done at his own peril.

Upon this point the judge directed the jury to inquire whether the plaintiff's jumping off was, under the existing circumstances, an act of reasonable precaution ; and instructed them that if the plaintiff was placed in such a perilous situation, in consequence of the defendants' failure to fulfil their obligations aforesaid, that, as a prudent precaution, for the purpose of self-preservation, he was induced to leap from the coach, the owners were answerable for any injury he might have sustained thereby, although it might now appear that he might, without injury, have retained his seat.

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

The argument was had at the last March term.

*Parsons*, for the defendants. Carriers of passengers are not liable for accidents which no skill or care can prevent. They are not insurers, and are only bound to transport passengers as safely as human foresight and care will permit. The distinction between the liabilities of carriers of goods and carriers of passengers has been long established. 2 Kent Com. (3d ed.) 598 – 601. Story on Bailm. (3d ed.) §§ 498, 571 *a*, 590, 592. *Aston* v. *Heaven*, 2 Esp. R. 533. *McKinney* v. *Neil*, 1 McLean, 540. *Camden & Amboy Rail Road Co.* v. *Burke*, 13 Wend. 611, 627. *Jackson* v. *Tollett*, 2 Stark. R. 37. *Dudley* v. *Smith*, 1 Campb. 167. *Hollister* v. *Nowlen*, 19 Wend. 236. *Crofts* v. *Waterhouse*, 3 Bing. 321, and 11 Moore, 137. *Boyce* v. *Anderson*, 2 Pet. 150. *Stokes* v. *Saltonstall*, 13 Pet. 181. *Ware* v. *Gay*, 11 Pick. 106. It is impossible to distinguish the case at bar from the case of *Christie* v. *Griggs*, 2 Campb. 80, where Mansfield, C. J. said, " if the axletree was sound, as far as human eye could discover, the defendant was not liable."

*L. Williams & Nutter*, for the plaintiff. Though there is a well settled distinction between the liabilities of common carriers of goods, and passenger carriers, yet the latter are liable for the insufficiency of their carriages. They warrant that their vehicles are fit for the use to which they are applied. This principle removes the apparent discrepancy in the adjudged cases. *Israel* v. *Clark*, 4 Esp. R. 259. *Bremner* v. *Williams*, 1 Car. & P. 414. 2 Stephens Nisi Prius, 983. 1 Selw. N. P. (11th ed.) 420. In *Crofts* v. *Waterhouse*, 3 Bing. 321, Best, C. J. says, the coachman (among other things) must be provided with " a coach and harness of sufficient strength, and properly made. If there be the least failure in any one of these things, the duty of the coach proprietors is not fulfilled, and they are answerable for any injury or damage that happens." In *Christie* v. *Griggs*, 2 Campb. 80, Mansfield, C. J. said it lay on the defendant " to show that

the coach was as good a coach as could be made ; " and this is recognized as law, in 11 Pick. 112.

The case of *Sharp* v. *Grey*, 9 Bing. 457, and 2 Moore & Scott, 620, is decisive for the present plaintiff. The action in that case, as in the case at bar, was assumpsit on an under-taking to convey the plaintiff safely. Gaselee, J. said, " the burthen lay on the defendant to show there had been no defect in the construction of the coach. Whether there had been or not, was a question of fact on which the jury have deter-mined. In *Christie* v. *Griggs*, the accident was occasioned by a kennel which crossed the road, and not by any defect in the vehicle." Bosanquet, J. said, " the defendant was bound to provide a safe vehicle, and the accident happened from a defect in the axletree. If so, when the coach started it was not roadworthy, and the defendant is liable for the consequence, upon the same principle as a ship owner who furnishes a vessel which is not seaworthy." A ship owner is answerable for the consequences of a *latent* defect in his vessel. *Putnam* v. *Wood*, 3 Mass. 481. *Lyon* v. *Mells*, 5 East, 428. Abbott on Ship., (4th Amer. ed.) 218.

The decision in *Crofts* v. *Waterhouse*, (ubi sup.) does not conflict with the doctrine for which the plaintiff contends. That was an action for negligence, and of course could not be maintained without proof of negligence.

*Greenleaf*, in reply. The decision in *Sharp* v. *Grey* went no further than former decisions. In that case, the defect in the axletree, might have been discovered on inspection ; and it was left to the jury " to consider whether there had been, on the part of the defendant, that degree of vigilance which was required by his engagement to carry the plaintiff safely." The jury found that there had not been such vigilance, and the court refused to set aside the verdict. The defendant was held liable for *negligence*, and not for unavoidable acci-dent. In the case at bar, the defect in the axletree could not have been discovered. And *Harris* v. *Costar*, 1 Car. & P. 636, shows that a count upon an undertaking to carry a passenger safely cannot be supported without proof of some

1 *

actual negligence of the defendant.   See *Bretherton* v. *Wood*
3 Brod. & Bing. 54.

The silence of the books, on the subject of an action by a
passenger against a ship owner for injury caused by a latent
defect in a vessel, is an answer to the plaintiff's argument
drawn from a simile used by Bosanquet, J. in *Sharp* v. *Grey.*

HUBBARD, J.   The question presented in this case is one
of much importance to a community like ours, so many of
whose citizens are engaged in business which requires their
transportation from place to place in vehicles furnished by
others; and though speed seems to be the most desirable
element in modern travel, yet the law points more specifically
to the security of the traveller.

Under the charge of the learned judge who tried this case,
we are called upon to decide whether the proprietors of stage
coaches are answerable for all injuries to passengers arising
from accidents happening to their coaches, although proceed-
ing from causes which the greatest care in the examination and
inspection of the coach could not guard against, or prevent;
or, in other words, whether a coach must be alike free from
secret defects, which the owner cannot detect, after the most
critical examination, as from those which might, on such an
examination, be discovered.

The learned judge ruled, that the defendants, as proprietors
of a coach, were bound by law, and by an implied promise on
their part, to provide a coach, not only apparently but really
roadworthy, and that they were liable for any injury that
might arise to a passenger from a defect in the original con-
struction of the coach, although the imperfection was not
visible, and could not be discovered upon inspection and
examination.

The law respecting common carriers has ever been rigidly
enforced, and probably there has been as little relaxation of
the doctrine, as maintained by the ancient authorities, respect-
ing this species of contract, as in any one branch of the com-
mon law.   This arises from the great confidence necessarily
reposed in persons engaged in this employment.   Goods are

entrusted to their sole charge and oversight, and for which they receive a suitable compensation; and they have been, and still are, held responsible for the safe delivery of the goods, with but two exceptions, viz. the act of God and the king's enemies; so that the owners of goods may be protected against collusive robberies, against thefts and embezzlements, and negligent transportation. But in regard to the carriage of passengers, the same principles of law have not been applied; and for the obvious reason, that a great distinction exists between persons and goods, the passengers being capable of taking care of themselves, and of exercising that vigilance and foresight, in the maintenance of their rights, which the owners of goods cannot do, who have entrusted them to others.

It is contended by the counsel for the plaintiff, that the proprietor of a stage coach is held responsible for the safe carriage of passengers so far that he is a warrantor that his coach is roadworthy, that is, is absolutely sufficient for the performance of the journey undertaken; and that if an accident happens, the proof of the greatest care, caution and diligence, in the selecting of the coach, and in the preservation of it during its use, will not be a defence to the owner; and it is insisted that this position is supported by various authorities. The cases, among many others cited, which are more especially relied upon, are those of *Israel* v. *Clark*, 4 Esp. R. 259; *Crofts* v. *Waterhouse*, 3 Bing. 319; *Bremner* v. *Williams*, 1 Car. & P. 414; and *Sharp* v. *Grey*, 9 Bing. 457. If these cases do uphold the doctrine for which they are cited, they are certainly so much in conflict with other decided cases, that they cannot be viewed in the light of established authorities. But we think, upon an examination of them and comparing them with other cases, they will not be found so clearly to sustain the position of the plaintiff, as has been argued.

It must be borne in mind, that the carrying of passengers for hire, in coaches, is comparatively a modern practice; and that though suits occur against owners of coaches, for the

loss of goods, as early as the time of Lord Holt, yet the first case of a suit to recover damages by a passenger, which I have noticed, is that of *White* v. *Boulton*, Peake's Cas. 81, which was tried before Lord Kenyon in 1791, and published in 1795. That was an action against the proprietors of the Chester mail coach for the negligence of the driver, by reason of which the coach was overturned, and the plaintiff's arm broken, and in which he recovered damages for the injury; and Lord Kenyon, in delivering his opinion, said, "when these [mail] coaches carried *passengers*, the proprietors of them were bound to carry them safely and properly." The correctness of the opinion cannot be doubted, in its application to a case of negligence. The meaning of the word "safely," as used in declarations for this species of injury, is given hereafter.

The next case which occurred was that of *Aston* v. *Heaven*, 2 Esp. R. 533, in 1797, which was against the defendants, as proprietors of the Salisbury stage coach, for negligence in the driving of their coach, in consequence of which it was overset and the plaintiff injured. This action was tried before Eyre, C. J. It was contended by the counsel for the plaintiff, that coach owners were liable in all cases, except where the injury happens from the act of God or of the king's enemies; but the learned judge held that cases of loss of goods by carriers were totally unlike the case before him. In those cases, the parties are protected by the custom; but as against carriers of persons, the action stands alone on the ground of negligence.

The next case was that of *Israel* v. *Clark*, 4 Esp. R. 259, in 1803, where the plaintiff sought to recover damages for an injury arising from the overturning of the defendant's coach, in consequence of the axletree having broken; and one count alleged the injury to have arisen from the overloading of the coach. It was contended that if the owners carried more passengers than they were allowed by act of parliament, that should be deemed such an overloading. To this Lord Ellenborough, who tried the cause, assented, and said, "if they

carried more than the statute allowed, they were liable to its penalties; but they might not be entitled to carry so many; it depended on the strength of the carriage. They were bound by law to provide sufficient carriages for the safe conveyance of the public who had occasion to travel by them. At all events, he would expect a clear landworthiness in the carriage itself to be established." This is one of the cases upon which the present plaintiff specially relies. It was a *nisi prius* case, and it does not appear upon which count the jury found their verdict. But the point pending in the present case was neither discussed nor started, viz. whether the accident arose from the negligence of the owner in not providing a coach of sufficient strength, or from a secret defect not discoverable upon the most careful examination. No opinion was expressed whether the action rests upon negligence or upon an implied warranty. But it was stated that the defendants were bound by law to provide sufficient carriages for the passage, and, at all events, that there should be a clear landworthiness in the carriage itself.

The general position is not denied with regard to the duty of an owner to provide safe carriages. The duty, however, does not in itself import a warranty. The judge himself may have used stronger expressions, in the terms " landworthiness in the carriage," than he intended by the thought of seaworthiness in a ship, and the duty of ship owners in that respect. If the subject had been discussed, and the distinctions now presented had been raised, and then the opinion had followed, as expressed in the report, it would be entitled to much more consideration than the mere strength of the words now impart to it.

The next case was that of *Christie* v. *Griggs*, 2 Campb. 79, in 1809. There the axletree of the coach snapped asunder at a place where there was a slight descent from the kennel crossing the road, and the plaintiff was thrown from the top of the coach. Sir James Mansfield, in instructing the jury, said, " as the driver had been cleared of negligence, the question for the jury was as to the sufficiency .f the coach. If the

axletree was sound, as far as human eye could discover, the defendant was not liable. There was a difference between a contract to carry goods and a contract to carry passengers For the goods, the carrier was answerable at all events, but he did not warrant the safety of the passengers. His undertaking as to them went no further than this, that, as far as human care and foresight could go, he would provide for their safe conveyance. Therefore, if the breaking down of the coach was purely accidental, the plaintiff had no remedy for the misfortune he had encountered."

The case of *Bremner* v. *Williams*, 1 Car. & P. 414, in 1824, is relied on by the plaintiff. There, Best, C. J. said he considered that "every coach proprietor warrants to the public that his stage coach is equal to the journey it undertakes, and that it is his duty to examine it previous to the commencement of every journey." And so, in *Crofts* v. *Waterhouse*, 3 Bing. 321, in 1825, Best, C. J. said, " the coachman must have competent skill, and use that skill with diligence ; he must be well acquainted with the road he undertakes to drive ; he must be provided with steady horses, a coach and harness of sufficient strength, and properly made ; and also with lights by night. If there be the least failure in any one of these things, the duty of the coach proprietors is not fulfilled, and they are answerable for any injury or damage that happens." But though this language is strong, and would apparently import a warranty, on the part of the stage proprietor, as to the sufficiency of his coach, yet Park, J. in the same case said, " a carrier of passengers is only liable for negligence." This shows that the court did not mean to lay down the law, that a stage proprietor is in fact a warrantor of the sufficiency of his coach and its equipments, but that he is bound to use the utmost diligence and care in making suitable provision for those whom he carries ; and we think such a construction is warranted by the language of the same learned judge, (Best,) in the case of *Harris* v. *Costar*, 1 Car & P. 636, in 1825, where the averment in the declaration was, that the defendant undertook to carry the plaintiff *safely*

The judge held that it did not mean that the coach proprietor undertook to convey safely absolutely, but that it was to be construed like all other instruments, taking the whole together, and meant that the defendants were to use due care.

But the case mainly relied upon by the plaintiff is that of *Sharp* v. *Grey*, 9 Bing. 457, where the axletree of a coach was broken and the plaintiff injured. There the axle was an iron bar enclosed in a frame of wood of four pieces, secured by clamps of iron. The coach was examined, and no defect was obvious to the sight. But after the accident, a defect was found in a portion of the iron bar, which could not be discovered without taking off the wood work; and it was proved that it was not usual to examine the iron under the wood work, as it would rather tend to insecurity than safety. It does not appear by the statement, that the defect could not have been seen, on taking off the wood work; but it would rather seem that it might have been discovered. However that may be, the language of different judges, in giving their opinions, is relied upon as maintaining the doctrines contended for by the plaintiff. Gaselee, J. held that " the burthen lay on the defendant to show there had been no defect in the construction of the coach." Bosanquet, J. said, " the chief justice " (who tried the case) " held that the defendant was bound to provide a safe vehicle, and the accident happened from a defect in the axletree. If so, when the coach started it was not roadworthy, and the defendant is liable for the consequence, upon the same principle as a ship owner who furnishes a vessel which is not seaworthy." And Alderson, J. said he was of the same opinion, and that " a coach proprietor is liable for all defects in his vehicle, which can be seen at the time of construction, as well as for such as may exist afterwards, and be discovered on investigation. The injury in the present case appears to have been occasioned by an original defect of construction; and if the defendant were not responsible, a coach proprietor might buy ill-constructed or unsafe vehicles, and his passengers be without remedy."

This case goes far to support the plaintiff in the doctrine contended for by his counsel, as it would seem to place the case upon the ground that the coach proprietor must, at all events, provide a coach absolutely and at all times sufficient for the journey, and that he is a warrantor to the passenger to provide such a coach. But we incline to believe the learned judges gave too much weight to the comparison of Bosanquet, J. viz. that a coach must be roadworthy on the same principle that a ship must be seaworthy. We think the comparison is not correct, and that the analogy applies only where goods are carried, and not where passengers are transported. And no case has been cited, where a passenger has sued a ship owner for an injury arising to him personally in not conducting him in a seaworthy ship. If more was intended by the learned court, than that a coach proprietor is bound to use the greatest care and diligence in providing suitable and sufficient coaches, and keeping them in a safe and suitable condition for use, we cannot agree with them in opinion. To give their language the meaning contended for in the argument of the case at bar is, in fact, to place coach proprietors in the same predicament with common carriers, and to make them responsible, in all events, for the safe conduct of passengers, so far as the vehicle is concerned. But that the case of *Sharp* v. *Grey* is susceptible of being placed on the ground which we think tenable, namely, that negligence and not warranty lies at the foundation of actions of this description, may be inferred from the language of Mr. Justice Park, who, in giving his opinion, says, " this was entirely a question of fact. It is clear that there was a defect in the axletree; and it was for the jury to say whether the accident was occasioned by what, in law, is called negligence in the defendant, or not." And Tindal, C. J. who tried the cause before the jury, left it for them to consider whether there had been that vigilance which was required by the defendant's engagement to carry the plaintiff safely; thus apparently putting the case on the ground of negligence and not of warranty. See also *Bretherton* v. *Wood*, 3 Brod. &

Bing. 54, and 6 Moore, 141. *Ansell* v. *Waterhouse,* 6 M. & S. 385, and 2 Chit. R. 1.

The same question has arisen in this country, and the decisions exhibit a uniformity of opinion that coach proprietors are not liable as common carriers, but are made responsible by reason of negligence. In the case of *Camden & Amboy Rail Road Co.* v. *Burke,* 13 Wend. 626, the court say that the proprietors of public conveyances are liable at all events for the baggage of passengers; but as to injuries to their persons, they are only liable for the want of such care and diligence as is characteristic of cautious persons. And in considering the subject again in the case of *Hollister* v. *Nowlen,* 19 Wend. 236, they say, that " stage coach proprietors, and other carriers by land and water, incur a very different responsibility in relation to the *passenger* and his *baggage.* For an injury to the passenger, they are answerable only where there has been a want of proper care, diligence or skill; but in relation to baggage, they are regarded as insurers, and must answer for any loss not occasioned by inevitable accident or the public enemies."

In a case which occurred in respect to the transportation of slaves, (*Boyce* v. *Anderson,* 2 Pet. 155,) Chief Justice Marshall, in giving the opinion of the court, says, " the law applicable to common carriers is one of great rigor. Though to the extent to which it has been carried, and in cases to which it has been applied, we admit its necessity and policy, we do not think it ought to be carried further, or applied to *new cases.* We think it has not been applied to living men, and that it ought not to be applied to them." So in the case of *Stokes* v. *Saltonstall,* 13 Pet. 181, the question arose and was thoroughly discussed; and the same opinions are maintained as in the cases above cited from Wendell. And the whole subject is examined by Judge Story, in his Treatise on Bailments, §§ 592 – 600, with his usual learning; and his result is the same.

If there is a discrepancy between the English authorities which have been cited, we think the opinions expressed by

Chief Justice Eyre and Chief Justice Mansfield are most consonant with sound reason, as applicable to a branch of the law comparatively new, and, though given at *nisi prius*, are fully sustained by the discussions which the same subject has undergone in the courts of our own country. We have said, as being most consonant with sound reason, or good common sense, as applied to so practical a subject; because, if such a warranty were imposed by force of law upon the proprietors of coaches and other vehicles for the conveyance of passengers, they would in fact become the warrantors of the work of others, over whom they have no actual control, and — from the number of artizans employed in the construction of the materials of a single coach — whom they could not follow. Unless, therefore, by the application of a similar rule, every workman shall be held as the warrantor, in all events, of the strength, sufficiency and adaptation of his own manufactures to the uses designed — which, in a community like ours, could not be practically enforced — the warranty would really rest on the persons purchasing the article for use, and not upon the makers.

If it should be said that the same observations might be applied to ship owners, the answer might be given, that they have never been held as the warrantors of the safety of the passengers whom they conveyed; and as to the transportation of goods, owners of general ships have always been held as common carriers, for the same reasons that carriers on land are bound for the safe delivery of goods entrusted to them. But as it respects the seaworthiness of a ship, the technical rules of law respecting it have been so repeatedly examined, and the facts upon which they rest so often investigated, that the questions which arise are those of fact and not of law, and in a vast proportion of instances depend upon the degree of diligence and care which are used in the preservation of vessels, and practically resolve themselves into questions of negligence; so that the evils are very few that arise from the maintenance of the doctrine that a ship must be seaworthy in order to be the subject of insurance.

The result to which we have arrived, from the examination of the case before us, is this: That carriers of passengers for hire are bound to use the utmost care and diligence in the providing of safe, sufficient and suitable coaches, harnesses, horses and coachmen, in order to prevent those injuries which human care and foresight can guard against; and that if an accident happens from a defect in the coach, which might have been discovered and remedied upon the most careful and thorough examination of the coach, such accident must be ascribed to negligence, for which the owner is liable in case of injury to a passenger happening by reason of such accident. On the other hand, where the accident arises from a hidden and internal defect, which a careful and thorough examination would not disclose, and which could not be guarded against by the exercise of a sound judgment and the most vigilant oversight, then the proprietor is not liable for the injury, but the misfortune must be borne by the sufferer, as one of that class of injuries for which the law can afford no redress in the form of a pecuniary recompense. And we are of opinion that the instructions, which the defendants' counsel requested might be given to the jury in the present case, were correct in point of law, and that the learned judge erred in extending the liability of the defendants further than was proposed in the instructions requested.

The point arising on the residue of the instructions was not pressed in the argument; and we see no reason to doubt its correctness, provided the peril to which the plaintiff was exposed arose from a defect or accident for which the defendants were otherwise liable. *Jones* v. *Boyce*, 1 Stark. R. 493.

*New trial granted.*