MRS. SARAH MORARITY v. DURHAM TRACTION COMPANY.

(Filed 12 April, 1911.)

1. **Street Railways—Alighting Passengers—Negligence—Questions for Jury—Instructions.**

   In an action for damages against a street car company for negligence alleged in suddenly starting the car while plaintiff, a woman of 58 years, seeming to the conductor to be "old and clumsy," was alighting at her destination, of which she had previously notified the conductor, from an ordinary summer car with seats running across and handholds at either end of the seats, the distance from the floor of the car to the running-board being 17 inches and from that to the ground 25 inches, the ground sloping at the place somewhat over 9 inches, an instruction is proper, that if the jury should find, under supporting and conflicting evidence, that if the car was suddenly started and jerked as the plaintiff was alighting with one foot on the running-board and the other in the act of descending to the ground, whereby the plaintiff was thrown to the ground, they should answer the issue of negligence "Yes," but otherwise if the plaintiff fell on the sloping ground after leaving the car.

2. **Street Railways—Alighting Passengers—Duty of Conductor— Rule of the Prudent Man—Negligence—Questions for Jury.**

   As to whether a street-car conductor owes a duty to assist a passenger to alight is a question for the jury, under the rule of the prudent man, with the burden of proof on plaintiff, where such assistance would seem to be required; and defendant's negligence is a question for the jury when there is evidence tending to show that plaintiff was a woman 58 years old, appeared to the

conductor to be "old and clumsy," was injured while alighting from a summer car at a customary stopping point, her destination, of which she had previously notified the conductor, and where the ground sloped more than 9 inches.

### 3. Negligence—Release—Agreeing Mind—Questions for Jury.

In this case there was evidence tending to show that defendant obtained a release from plaintiff for damages in consideration of $10 and the payment of plaintiff's drug and doctor's bill, soon after the injury complained of was inflicted, while the latter was in bed suffering from the effects of the injury and under the influence of drugs: *Held*, it was a question for the jury to determine whether the plaintiff at the time of the execution of the release had sufficient mental capacity to understand its nature and effect.

APPEAL by defendant from *Lyon, J.,* at October Term, 1911, of DURHAM.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*A. M. Moore and Bryant & Brogden for plaintiff.*
*Foushee & Foushee for defendant.*

CLARK, C. J. This is an action for injuries sustained in getting off a street car. The car was an ordinary summer car with seats running across, with handholds at either end of the seats. The evidence on both sides is that the car had come to a full stop; that the distance from the floor of the car to the running-board was 17 inches, and from the running-board to the ground was 25 inches; that the car stopped at a regular stopping place and that the ground sloped at that place something over 9 inches. The plaintiff was a female 58 years of age. Her allegation is that the car moved while she was in the act of getting off and before she had time to reach the ground, giving a sudden plunge or jerk which caused her to lose her balance and fall, whereby she sustained serious injuries. The defendant contended that the plaintiff stumbled after she left the car by reason of some inequality in the ground for which the defendant was not responsible.

The judge charged the jury that if they found from the

greater weight of the evidence that when the car stopped and while the plaintiff was in the act of alighting therefrom with one foot on the running-board and the other in the act of descending to the ground, the car was suddenly started and jerked, whereby she was thrown to the ground, the defendant was guilty of negligence, and the jury should find the fourth issue "Yes." But that if the jury should find from the evidence that if the car was standing still and did not move while she was in the act of getting off the car, but that while the plaintiff was walking off from the car she stumbled and fell and hurt herself, the defendant would not be responsible for that, and the jury should answer the fourth issue "No."

While there are a good many exceptions, the above instruction states the real controversy, which is almost entirely one of fact for the jury, and the case was submitted by the judge with instructions as to the law under the well-settled principles of negligence applicable in such cases. It is unnecessary to discuss them in this case, as they have so repeatedly been decided by the Court. The defendant relies, however, much upon the following instruction by the court: "That if the jury should find by the greater weight of the evidence, the burden being upon the plaintiff, that the car was of such height and the running-board was such a distance from the ground that an ordinarily prudent man under the circumstances of the situation would not have had such a car stop at such a place, and if the jury should find that the height of the car and the distance from the running-board to the ground and place where the car stopped was in such condition that a reasonably prudent man would not have permitted the plaintiff to have gotten off the car without assistance, then it was the duty of the defendant, by its conductor, to assist her in getting off, and that if he failed to do so under the circumstances his failure was negligence, as the court has defined negligence to be." In this we find no error. There was evidence that the plaintiff was 58 years old, and on the other hand there was evidence that she had walked 3 miles that morning, tending to show that she was still vigorous. Whether in view of all the evidence a rea-

sonably prudent man would have allowed the plaintiff, incumbered with the skirts of her sex, to get off a car of that height without assistance at a place where the ground was steeply sloping, was a matter of fact for the jury, which was properly left to them. The conductor testified that the plaintiff seemed "old and clumsy." Whether under all the circumstances it was negligence in him not to render her assistance was a matter to be determined by the jury from the evidence, using their knowledge acquired by their observation in the ordinary affairs of life. This is called "ordinary common sense," and is one of the strong points which recommends the jury system for the determination of disputed matters of fact.

The plaintiff's hip was broken and there was testimony that she was otherwise injured. The day after she was hurt and while she was in bed suffering from the injury, the defendant secured from her a release in consideration of the sum of $10 in cash, $15 in doctor's bill, and $13.65 for drug bill. The plaintiff testified that she was under the influence of drugs and suffering from pain and does not remember giving the receipt. The jury find that $1,000 was a fair compensation for her injuries. Upon all the evidence and under a correct charge from the court, the jury find upon an issue submitted that the plaintiff at the time of the execution of the said release did not have sufficient mental capacity to understand its nature and effect.

The exceptions in the case present mostly questions which have been so often passed upon by the Court that they do not require further elaboration. The chief point presented is that first discussed above, as to which Moore on Carriers, 682, says: "A railroad company having provided suitable and safe means for entering and alighting, and having stopped its train in the proper position, is under no obligation to furnish some one to aid passengers generally in getting on board or alighting from its cars. In the case of infirm persons, however, whose age and infirmity are apparent from their appearance, it is the duty of the carrier's servants to assist them in alighting from or boarding a train, if such assistance is necessary for their safety. And where a train stops at a place where passengers cannot

alight without difficulty, they are bound to assist them." Again, he says: "Ordinarily, whether or not assistance should have been rendered by the carrier's employees to a passenger in a given instance is a question for the jury under the circumstances in the case."

In *R. R. v. Miller,* 11 L. R. A., 396, 23 Am. St., 315, the Court sustained the following instruction: "Whether or not the failure to assist Mrs. Miller in getting off the train on the part of the persons in charge of said train was a want of that measure of care which the employees of the defendant owed to her as a passenger, you will determine from all the circumstances, taking into consideration the failure on her part to ask for assistance." This is substantially the charge given by the court in this case. In *Hinshaw v. R. R.,* 118 N. C., 1053-1055, discussing injury to a passenger in alighting from a car, it was held that such matters should be submitted to the jury. In the present case the conductor testified that the plaintiff "seemed to be old and clumsy," the car was quite high from the ground, which was steep and sloping at that point, and she had notified the conductor of her wish to alight at that point. Whether it was negligence in him to permit her to alight without assistance and whether such negligence was one of the causes of the injury were matters properly submitted for determination by the jury.

Upon consideration of all the exceptions, we find

No error.