[Civil No. 4052.   Filed October 9, 1939.]

[94 Pac. (2d) 639.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. WILLIAM B. BUNTIN, Appellee.

Messrs. Knapp, Boyle & Thompson, for Appellant.

Messrs. Krucker & Fowler, for Appellee.

LOCKWOOD, J.—William B. Buntin, hereinafter called plaintiff, brought suit against the Southern Pacific Company, hereinafter called defendant, to recover damages for personal injuries alleged by plaintiff to have been sustained as the result of negligence of defendant. The case was tried to a jury which rendered a verdict in favor of plaintiff, and thereafter this appeal was taken.

The second amended complaint, on which the case was tried, may be summarized as follows: The plaintiff was a traveler on a train operated by defendant, his destination being Tucson, Arizona. The train arrived in Tucson about 3:30 A. M. December 19th, and the defendant, instead of discharging him at the usual place where passengers alighted, discharged and set him down from the train at an undetermined distance west of the station platform, at a place which was not suitable, proper nor safe. No lights were maintained there, and plaintiff was not notified, when he was so discharged, of the location of the station. After being discharged, plaintiff began wandering around trying to find the station, and continued to search for

it for some time, and while he was so engaged, and without any warning signal being given by defendant, a switch engine operated by it struck plaintiff, by reason of which he was severely injured. Plaintiff further sets up that he

"was suffering from permanently impaired vision which amounted to almost total blindness in both eyes; that he was of the age of sixty-five and in a precarious and feeble state of health, all of which things the defendant, its agents and employees, knew when they discharged him as a passenger."

The answer of the defendant is a general denial and an allegation that the plaintiff was guilty of contributory negligence.

If it is necessary in the further course of the opinion, we shall elaborate upon the pleadings, but this states substantially the issues at the time of the trial.

The evidence, considered in the strongest manner in favor of plaintiff, shows the following facts: At the time of the accident he was a retired physician, about sixty-five years of age, in somewhat infirm health. He was suffering from a progressive atrophy of the optic nerve and his sight was extremely poor, though he was able to distinguish light from darkness, and under a proper light could determine the outline of most near objects, but he was totally incapable of moving safely about in semi-darkness without assistance. The employees of defendant, who were on the train with plaintiff, noticed when he was about to get off the train that he seemed like a man who had just awakened from sleep, but none of them had any knowledge of his deficiency of vision, nor does the evidence show there was anything about his conduct which would lead them to believe that there was anything wrong with his eyesight, or that he was not able to care for himself as well as the ordinary man of that age. When the train reached Tucson, plaintiff was asleep.

No distinct announcement was made to the passengers in general, when the train stopped, that it had reached that city, and after a ten minutes wait it was about to resume progress. Just before it started the porter's attention was called to plaintiff by a passenger, and he was awakened. Before he could alight, the train started, but was stopped within less than two car lengths, and plaintiff was assisted to alight by the porter, a brakeman and the conductor. The train then proceeded on its way. Up to the time the train finally left, plaintiff had in no manner been injured. The place where he was put off from the train was less than two hundred feet from the place where it had stopped originally, the exact distance being nowhere shown by the testimony. At this place there was a hard gravel surface, which was commonly used by passers-by as a walk, lying between passenger tracks numbers 1 and 2, the latter being the closest to the station. In order to reach the main door of the station, it was necessary to step across track 2 and walk towards the east between four hundred fifty and five hundred feet along a regular walk, part graveled and part asphalt. For a time not less than ten nor more than thirty minutes after the train left, the space in front of and near the station was brilliantly lighted by flood lights, so that a man with normal eyesight would have no difficulty in seeing where the station was, and proceeding there without any danger to himself. At the end of this time, the flood lights in front of the station were turned off. The plaintiff, due to the condition of his eyesight, was not sure in which direction the station was, although he said that he did not see some high-up lights somewhere south of the railroad. He walked up and down between the tracks, occasionally sitting down on his suitcase to rest. Along about five or five-thirty in the morning a switch engine operated by defendant

was working on the tracks near the station. One of the brakemen noticed plaintiff in the space between tracks 1 and 2, and shortly thereafter the switch engine, which was coming east on track 2, struck plaintiff and knocked him to the ground, as a result of which he received the injuries complained of.

There are three assignments of error, but we think it necessary to consider only subdivision (b) of the second assignment, which is that the court erred in giving the following instruction to the jury:

"If you believe from the preponderance of the evidence in this case that Doctor Buntin was suffering from some physical disability, such as blindness, feebleness, or any other condition, and if you further believe that the employees of the railroad company at the time that they discharged him as a passenger at Tucson had known, *or by the use of ordinary care should have known,* of such disability, then I charge you that the railroad company's employees were under the duty to assist Doctor Buntin and warn him when he was discharged, and if such failure to assist and to warn him was the direct cause of his injuries, then the railroad company may be held liable." (Italics ours.)

It is urged by defendant that this instruction is erroneous, in that there was no evidence whatever that the defendant or any of its employees knew of the plaintiff's bad eyesight, and further that it imposed upon defendant and its employees the duty of ascertaining whether plaintiff suffered from any disability, and the nature and extent of the disability.

We have examined all of the authorities bearing on this question cited by plaintiff and defendant, and in addition thereto all that we could discover bearing in any way upon the question of the duty of a common carrier to passengers who are abnormal by reason of any physical or mental disability. We find that there is a practical unanimity of opinion as to

what this duty is. We think an excellent definition of negligence is the following:

" . . . negligence is the omission to do something which a reasonably prudent man, guided by those considerations which usually regulate the conduct of human affairs, would do; or is the doing of something which a prudent and reasonable man, guided by those same considerations would not do; it is not intrinsic or absolute, but is always relative to the surrounding circumstances of time, place and persons."

*Atchison, Topeka & Santa Fe Ry. Co.* v. *France,* (Ariz.) 94 Pac. (2d) 434, just decided but not yet reported [in State report].

The question then is as to how the duty imposed upon a defendant may be modified by the surrounding circumstances of time, place and persons. So far as the manner in which the duty of a common carrier to passengers is modified by the physical or mental condition of the passengers is concerned, there are three principles pertinent to the present case.

█ If the carrier is guilty of an act of negligence which injures a passenger, and such injury is aggravated by said abnormal physical or mental condition, the carrier is responsible to the full extent of the injury, notwithstanding it had no knowledge of the abnormal condition. *St. Louis S. W. Ry. Co. of Texas* v. *Ferguson,* 26 Tex. Civ. App. 460, 64 S. W. 797; *East Line & R. R. Ry. Co.* v. *Rushing,* 69 Tex. 306, 6 S. W. 834; *Brown* v. *Chicago, Milwaukee & St. P. Ry. Co.,* 54 Wis. 342, 11 N. W. 356, 911, 41 Am. Rep. 41; *Dickinson* v. *Bryant,* 69 Okl. 297, 172 Pac. 432, L. R. A. 1918E 978; *Cassels* v. *City of Seattle,* 195 Wash. 433, 81 Pac. (2d) 275; *Jordan* v. *City of Seattle,* 30 Wash. 298, 70 Pac. 743.

█ If the carrier knows the passenger to be abnormal, either physically or mentally, it is then bound to give such higher degree of care for the safety of

that person as his infirmity requires, and a failure to do so is negligence, even if the conduct of the carrier would not be negligence towards the normal person. *Morarity* v. *Durham Traction Co.,* 154 N. C. 586, 70 S. E. 938; *Junkermann* v. *Tilyou Realty Co.,* 213 N. Y. 404, 108 N. E. 190, L. R. A. 1915F 700; *Nelson* v. *Great Northern Ry. Co.,* 52 Minn. 276, 53 N. W. 1129; *Benson* v. *Northland Transp. Co.,* 200 Minn. 445, 274 N. W. 532; *Mitchell* v. *Des Moines City Ry. Co.,* 161 Iowa 100, 141 N. W. 43; *Bennett* v. *Seattle Elec. Co.,* 56 Wash. 407, 105 Pac. 825.

But if the carrier does not know of the abnormality, it owes no more care to the abnormal than it would to a normal passenger, and it is under no duty of making an investigation to determine the condition of the passenger. *Welsh* v. *Spokane & I. E. R. Co.,* 91 Wash. 260, 157 Pac. 679, L. R. A. 1916F 484; *Scott* v. *Union Pac. R. Co.,* 99 Neb. 97, 155 N. W. 217; *Cent. of Georgia Ry. Co.* v. *Carlisle,* 2 Ala. App. 514, 56 So. 737; *Sullivan* v. *Seattle Elec. Co.,* 51 Wash. 71, 97 Pac. 1109, 130 Am. St. Rep. 1082; *Pullman Palace-Car Co.* v. *Barker,* 4 Colo. 344, 34 Am. Rep. 89, 22 Pac. St. Rep. 344. The leading case on this last point is *Illinois Cent. R. Co.* v. *Cruse,* 123 Ky. 463, 96 S. W. 821, 823, 8 L. R. A. (N. S.) 299, 13 Ann. Cas. 593. Therein the court said:

" . . . We think, however, if a passenger is in need of special assistance, either from sickness or other misfortune, and this fact is known to the employés of the carrier, it is their duty to render it; but they are not required to anticipate such wants or needs. The trial court therefore erred by inserting into the instructions given to the jury the idea that it was incumbent upon the employés of the appellant to observe the condition of the passengers in order to see whether or not they needed assistance. This thought is embraced in the use of the expression 'or was apparent' in the instructions after stating the duty of the em-

ployés of appellant if appellee's feebleness was known to them. As said before, if the employés of the railroad knew that the appellee was in feeble health, and needed assistance, it was their duty to render her such reasonable help as lay in their power in order that she might alight from the car in safety. But they owed her no duty of observation, to ascertain her condition, and, therefore, the expression 'or was apparent' should have been omitted. Nor was it the duty of the appellant to have its platform or station so lighted that the plaintiff might clearly see the steps and platform. All that was required of it was to have its steps and platform so reasonably lighted that the ordinary traveler could see sufficiently to alight in safety. The eyes of appellee might have been dim or weak from age or infirmity, and, although the steps and platform were sufficiently lighted to enable the average passenger to alight in safety, they may not have been so lighted as to enable her so to do."

This case, so far as we know, has never been seriously criticized, nor the doctrine laid down therein repudiated, and it has been quoted approvingly in many cases besides those above cited. *Gulf, C. & S. F. Ry. Co.* v. *Garner,* 52 Tex. Civ. App. 387, 115 S. W. 273; *Louisville & N. R. Co.* v. *Bowman,* 208 Ky. 39, 270 S. W. 471; *Louisville & N. R. Co.* v. *Dyer,* 152 Ky. 264, 153 S. W. 194, 48 L. R. A. (N. S.) 816; *Richardson* v. *Augusta & A. Ry. Co.,* 79 S. C. 535, 61 S. E. 83.

There is not a scintilla of evidence that the defendant ever knew that there was the slightest degree of impediment in the eyesight of the plaintiff, and all of the evidence is conclusive to the effect that if he had been of normal eyesight the place where he was put off from the train was reasonably safe for him, and that he could easily have proceeded to the station which, at the time he left the train, was brilliantly lighted so that any normal person could, and would, have seen where it was and how to reach there

safely. It is true that the defendant's employees knew that plaintiff was an elderly man, and that when he left the train he was not fully awake, but these matters in no way contributed to his injuries. If that had been all that was the matter with him, he could, should, and doubtless would, easily have reached the station without injury. Certainly, he would not have been in the position in which he was when he was injured by the switch engine.

Under all the circumstances of the case, it was prejudicial error to give the instruction complained of, as it incorrectly stated the law on a vital issue. We need not consider the other assignments of error.

The judgment of the superior court is reversed, and the case remanded for a new trial in accordance with the principles laid down herein.

ROSS, C. J., and McALISTER, J., concur.