SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| ERA C. NUNEZ, as personal representative of the Estate of LINDA JOYCE BROWN, | ) Arizona Supreme Court<br>) No. CV-11-0186-PR<br>) |
| Plaintiff/Appellee, | ) Court of Appeals<br>) Division Two<br>) No. 2 CA-CV 10-0201 |
| v. | )<br>) Pima County |
| PROFESSIONAL TRANSIT MANAGEMENT OF TUCSON, INC., an Arizona corporation; and GRACE ZOELLNER, a single woman, | ) Superior Court<br>) No. C20090652<br>)<br>) |
| Defendants/Appellants. | ) **O P I N I O N**<br>) |

Appeal from the Superior Court in Pima County
The Honorable Stephen C. Villarreal, Judge

**VACATED AND REMANDED**
_____

Memorandum Decision of the Court of Appeals, Division Two
Filed May 18, 2011

**VACATED**
_____

LAW OFFICE OF WILLIAM D NELSON, ESQ.                          Tucson
     By   William D. Nelson

And

KNAPP & ROBERTS, P.C.                                     Scottsdale
     By   David L. Abney
Attorneys for Era C. Nunez

SNELL & WILMER L.L.P.                                         Tucson
     By   William N. Poorten, III
          Andrew M. Jacobs
          Daniel P. Wierzba
Attorneys for Professional Transit Management
of Tucson, Inc. and Grace Zoellner
_____

**H U R W I T Z**, Vice Chief Justice

¶1     The issue in this negligence action is whether a common carrier has the duty to exercise the highest degree of care practicable under the circumstances or rather only the duty to exercise reasonable care.  We hold that the general negligence standard - reasonable care under all the circumstances – applies.

**I.**

¶2     On May 2, 2008, Linda Brown boarded a Tucson city bus operated by SunTran.  Brown was confined to a wheelchair.  The bus driver, Grace Zoellner, secured the wheels to the bus floor.  After the bus resumed its trip, a car abruptly stopped in front of it.  Zoellner braked sharply and Brown was thrown from her wheelchair, sustaining serious injuries.

¶3     Brown[1] sued SunTran and Zoellner (collectively, "SunTran"), alleging that Zoellner was negligent both in driving the bus and in failing to fasten Brown's seatbelt.  SunTran argued that Brown's refusal to wear a seatbelt caused her injury.  SunTran also argued that Brown's injuries were caused by the negligence of the driver of the car that stopped in front of the bus.

---

[1]     Before trial, Brown died from causes unrelated to this incident.  Her personal representative, Nunez, was substituted as plaintiff.  We refer to the plaintiff as Brown in this opinion for simplicity.

**¶4**          SunTran requested the judge to instruct the jury that common carriers have a duty to passengers to exercise reasonable care under the circumstances. The judge rejected that instruction, instead instructing as follows:

> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. Negligence is the failure to act as a reasonably careful person would act under the circumstances.
>
> The Defendants — Professional Transit Management of Tucson, Inc. and Grace Zoellner — as common carriers of passengers for hire, are bound to exercise the highest degree of care practicable under the circumstances.
>
> A failure to exercise the highest degree of care under the circumstances is negligence.

**¶5**          The jury awarded $186,777.87 in compensatory damages, but found Brown 30% at fault and Zoellner 70% at fault. The jury allocated no fault to the driver of the car that stopped in front of the bus.

**¶6**          The court of appeals affirmed, finding that this Court's case law required the highest degree of care instruction. *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 2 CA-CV 10-0201, 2011 WL 1998433, at *1-2 ¶¶ 1, 10 (App. May 18, 2011) (mem. decision).

**¶7**          We granted SunTran's petition for review to address the appropriate standard of care for common carriers. We have jurisdiction pursuant to Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12–120.24 (2003).

3

## II.

### A.

¶8      Under the English common law, common carriers were bailees when transporting goods, and as such were strictly liable for damage to the goods.  2 Dan B. Dobbs, Paul T. Hayden and Ellen M. Bublick, The Law of Torts § 260 at 27 (2d ed. 2011); Robert J. Kaczorowski, *The Common-Law Background of Nineteenth-Century Tort Law*, 51 Ohio St. L.J. 1127, 1130 n.14 (1990).  But because passengers, unlike goods, had some ability to protect themselves, common law courts rejected strict liability in negligence actions by passengers.  *See, e.g.*, *Aston v. Heaven*, (1797) 170 Eng. Rep. 445, 445-46 (K.B.).  Instead, courts imposed a duty of the highest degree of care practicable under the circumstances.  *See id.*

¶9      The rationale for applying a heightened standard of care to common carriers was that passengers depended upon the carrier to protect them from hazardous conditions that were frequently encountered in the early days of public transportation.  *See* Dobbs et al., *supra*, § 262 at 31.  Early American decisions adopted the heightened standard of care, the so-called "common carrier rule."  *See, e.g.*, *Stokes v. Saltonstall*, 38 U.S. 181, 191 (1839); *Chicago & A.R. Co. v. Pillsbury*, 14 N.E. 22, 23-26 (Ill. 1887); *Fairchild v. Cal. Stage Co.*, 13 Cal. 599, 605 (1859); *Ingalls v. Bills*, 50 Mass.

4

1, 12-13 (1845).  This approach remains in widespread use.  *See, e.g., Fieve v. Emmeck*, 78 N.W.2d 343, 347-48 (Minn. 1956); *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 212 (Tex. 2003).

¶10 Opinions of this Court have also long repeated the common carrier rule.  *See S. Pac. Co. v. Hogan*, 13 Ariz. 34, 37-38, 108 P. 240, 241 (1910); *Atchison, Topeka & Santa Fe Ry. Co. v. France*, 54 Ariz. 140, 145, 94 P.2d 434, 436 (1939); *Nichols v. City of Phoenix*, 68 Ariz. 124, 130, 202 P.2d 201, 204 (1949); *Napier v. Bertram*, 191 Ariz. 238, 242 n.9, 954 P.2d 1389, 1393 n.9 (1998).  On analysis, however, past Arizona decisions have been less than entirely enthusiastic in embracing the rule.

¶11 In *Atchison*, the trial court instructed the jury that a railroad was required "to exercise the highest degree of care for the safety of its passengers which is practicable under the circumstances."  54 Ariz. at 144, 94 P.2d at 436.  This Court, noting its agreement with the "majority" rule, stated that the instruction "correctly state[d] the duty of a carrier for hire to its passengers and that a failure to exercise the highest degree of care practicable under the circumstances amounts to negligence."  *Id.* at 144, 145, 94 P.2d at 436.  *Atchison* nonetheless reversed a judgment in favor of the plaintiffs because the trial court failed to give the standard negligence instruction requested by the railroad, which read:

> You are instructed that negligence is the omission to do something which a reasonably prudent man, guided by those considerations which usually regulate the conduct of human affairs would do; or is the doing of something which a prudent and reasonable man, guided by those same considerations would not do; it is not intrinsic or absolute, but is always relative to the surrounding circumstances of time, place and persons.

*Id.* at 143-44, 94 P.2d at 436.

¶12     This Court found that this "reasonably prudent man" instruction "correctly states the law," and that failure to give it "tended to mislead the jury, by failing to point out sufficiently to it the limitations on the care required . . . of a common carrier." *Id.* at 145, 94 P.2d at 437. The Court emphasized that "the duty of a prudent and reasonable man is . . . always relative to the surrounding circumstances of time, place and persons, and this applies to common carriers, as it does to all others." *Id.*

¶13     *Atchison* is hardly a model of analytical consistency. On the one hand, the Court found that the "highest degree of care" instruction "correctly" stated a common carrier's duty, but on the other, reversed for failure to give an ordinary "reasonable care" negligence instruction. *Atchison*'s ruling could be read as merely fact-specific. *See id.* ("Under some circumstances this failure to give the suggested instruction, even though, as we have said, it correctly states the law, might not have been prejudicial, but we think in the present case it

6

was."). But one week later, in another personal injury action by a passenger against a railroad, this Court cited the instruction requested by the railroad in *Atchison* as "an excellent definition of negligence." *S. Pac. Co. v. Buntin*, 54 Ariz. 180, 185, 94 P.2d 639, 641 (1939).

¶14 Subsequent opinions of this Court reciting the "highest degree of care" language did not involve jury instructions. *See Napier*, 191 Ariz. at 243-44, 954 P.2d at 1394-95 (discussing whether common carriers have a duty to carry uninsured motorist insurance); *Nichols*, 68 Ariz. at 129, 135-39, 202 P.2d at 204, 208-11 (discussing proximate cause). Indeed, no Arizona opinion "holds that it is reversible error to instruct the jury that a common carrier merely owes a duty of reasonable care toward its passengers." *Block v. Meyer*, 144 Ariz. 230, 234, 696 P.2d 1379, 1383 (App. 1985). Citing *Atchison*, *Block* found "no error in the trial court's failure to instruct the jury that a common carrier owes its passengers the highest standard of care practicable, or words to that effect." *Id.* The court of appeals cited with approval Prosser's comment that "[t]echnically the 'high degree' instruction is incorrect." *Id.* at 236, 696 P.2d at 1385 (citing William L. Prosser, Law of Torts § 34 at 181 (4th ed. 1971), and Restatement (Second) of Torts ("Second Restatement") § 314 (1965)).

7

¶15     Seventeen years later, the court of appeals upheld a "trial court's refusal to apply the common carrier doctrine because . . . it adds no useful element to the ordinary negligence standard of reasonable care under the circumstances." *Lowrey v. Montgomery Kone, Inc.*, 202 Ariz. 190, 195 ¶ 20, 42 P.3d 621, 626 (App. 2002). *Lowrey* found persuasive the reasoning of other courts that rejected the common carrier doctrine, *id.* at 196 ¶¶ 21–23, 42 P.3d at 627 (citing *Bethel v. N.Y.C. Transit Auth.*, 703 N.E.2d 1214, 1215-16 (N.Y. 1998) and *Sebastian v. District of Columbia*, 636 A.2d 958, 962 (D.C. 1994)), noting that

> an attempt to explain the common carrier doctrine to a jury would be riddled with the prospect of confusion. . . . To hold that a common carrier must exert *more than reasonable* care under the circumstances not only serves no useful purpose; it is a hard concept to make sense of and one very likely to be misunderstood.

*Id.* at 196 ¶ 23, 42 P.3d at 627. The court of appeals therefore concluded "that the time has come to discard the notion that a common carrier bears a higher duty toward its passengers than that of reasonable care under all of the circumstances." *Id.*

¶16     The decision below cited *Lowrey*, but suggested that Division One "lacked the authority" to abandon the common carrier doctrine in light of this Court's previous decisions. *Nunez*, 2011 WL 1998433, at *2 ¶ 10 (citing *Napier*, 191 Ariz. at 242 n.9, 954 P.2d at 1393 n.9). We do not today criticize that

8

conclusion; as noted above, *Atchison* and its progeny are not entirely clear, and several of our opinions (albeit in dicta) have described the common carrier doctrine as settled law. *See, e.g., Nichols*, 68 Ariz. at 130, 139, 202 P.2d at 204, 210; *Lunsford v. Tucson Aviation Corp.*, 73 Ariz. 277, 280, 240 P.2d 545, 546 (1952). But whether a highest degree of care instruction is appropriate in a passenger's negligence action against a common carrier is squarely presented in this case, and we now turn to that question.

**B.**

¶17     In general, "every person is under a duty to avoid *creating* situations which pose an unreasonable risk of harm to others." *Ontiveros v. Borak*, 136 Ariz. 500, 509, 667 P.2d 200, 209 (1983) (emphasis added) (quoting *Nazareno v. Urie*, 638 P.2d 671, 674 (Alaska 1981)). Because common carriers have a special relationship with passengers, their duties traditionally have extended beyond the mere obligation not to create a risk of harm. *See* Second Restatement § 314A(1)(a) and cmt. b. The special relationship imposes a duty to avoid harm from "risks created by the individual at risk as well as those created by a third party's conduct." Restatement (Third) of Torts ("Third Restatement"): Liability for Physical Harm § 40 cmt. g (Proposed

9

Final Draft No. 1 2007);[2] *see also Ft. Lowell-NSS Ltd. P'ship v. Kelly*, 166 Ariz. 96, 101, 800 P.2d 962, 967 (1990) (noting that common carriers "are often held to possess an affirmative duty to guard the safety of their [passengers]"); Second Restatement § 314A cmt. d.  In addition, a common carrier owes a duty to render passengers "first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others," regardless of whether the carrier created the risk of harm.  Second Restatement § 314A(1)(b).

**¶18**      But, "[t]he existence of a duty of care is a distinct issue from whether the standard of care has been met in a particular case." *Gipson v. Kasey*, 214 Ariz. 141, 143 ¶ 10, 150 P.3d 228, 230 (2007).  Although they impose broader duties on common carriers than on ordinary actors, the Restatements require only the exercise of "reasonable care."  Second Restatement § 314A cmt. e (stating that even with special relationships and affirmative duties "[t]he duty in each case is only one to exercise reasonable care under the circumstances"); Third Restatement § 40 cmt. d.

---

[2]    "With the exception of Comment d to § 27 and Comment a to § 28, the substance of Proposed Final Draft No. 1 (issued on April 6, 2005), has been finally approved by both the [American Law] Institute's Council and its membership."  Third Restatement § 40 (Proposed Final Draft No. 1 2007) Note.

¶19    Brown argues that a heightened standard of care is required because passengers entrust their safety to common carriers.   But people entrust their safety to others in many different contexts, such as undergoing surgery.   In the medical context, however, the common law imposed upon the surgeon only the duty to act as a reasonable surgeon would under the circumstances.   *See Acton v. Morrison*, 62 Ariz. 139, 142, 155 P.2d 782, 783 (1945).[3]   The standard of reasonable care "may be modified by the surrounding circumstances of time, place and persons."   *Buntin*, 54 Ariz. at 185, 94 P.2d at 641; *see also Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 357, 706 P.2d 364, 369 (1985) ("What is reasonable on the one hand or negligent on the other will depend on the circumstances."); Second Restatement § 283.   It is difficult to see why we should impose upon the common carrier a duty to do more than a reasonable carrier would do under the facts of each particular case.   *See Pannu v. Jacobson*, 909 A.2d 178, 194 (D.C. 2006) (stating that the standard of care for common carriers and doctors is the course of action that a reasonably prudent actor within the same field would have taken).

¶20    Brown also argues that most jurisdictions still adhere to the "highest standard of care" doctrine for common carriers.

---

[3]    The standard of care in medical malpractice cases has now been codified in A.R.S. § 12-563.

11

But we, of course, are not bound by decisions of other state courts in advancing our common law. Indeed, as one court has aptly noted, even cases that continue to "speak[] of a common carrier as being held to the highest degree of care," in fact subject carriers "to essentially the same standard as any other alleged tortfeasor, *i.e.*, an obligation to exercise due care." *Sebastian*, 636 A.2d at 962 (internal quotation marks and citation omitted); *see also Wash. Metro. Area Transit Auth. v. Jeanty*, 718 A.2d 172, 175 (D.C. 1998) (harmonizing cases articulating standards of care for common carriers).

¶21     The New York Court of Appeals has expressly rejected the common carrier doctrine, instead adopting the general standard of reasonable care under the circumstances. *Bethel*, 703 N.E.2d at 1218.[4] As *Bethel* noted, one underpinning of the doctrine – the 19th century perception that the steam railroad and other instruments of public transport were "ultrahazardous" – is no longer accurate. *Id.* at 1216. But more importantly, *Bethel* correctly recognized that any dangers in common carriage and the passenger's dependence upon the carrier can

---

[4]    *See also Union Traction Co. of Ind. v. Berry*, 121 N.E. 655, 657 (Ind. 1919) (stating that the appropriate standard of care for common carriers is what "a person of reasonable or ordinary prudence would exercise in view of all the conditions and circumstances"); *Frederick v. City of Detroit*, 121 N.W.2d 918, 923 (Mich. 1963) (concluding that a carrier owes its passengers "the duty to exercise such diligence as would be exercised in the circumstances by a reasonably prudent carrier").

12

appropriately be considered under the general standard of reasonable care under the circumstances, which "necessarily takes into account the circumstances with which the actor was actually confronted," including "any special relationship of dependency between the victim and the actor." *Id.*

¶22 As the *Lowrey* court did, we find *Bethel* persuasive. *See Lowrey*, 202 Ariz. at 196 ¶ 23, 42 P.3d at 627. We particularly agree with the court's observation in *Lowrey* that "an attempt to explain the common carrier doctrine to a jury would be riddled with the prospect of confusion." *Id.* Our cases confirm that proposition. *Atchison* found a heightened degree of care instruction misleading, and we have since cautioned that "[t]he law does not require [carriers] to exercise all the care, skill, and diligence of which the human mind can conceive." *Lunsford*, 73 Ariz. at 280, 240 P.2d at 547. The dividing line between the exercise of reasonable care under all the circumstances and the common carrier doctrine is thus both practically and intellectually elusive. We have also emphasized that common carriers are not insurers of the safety of their passengers. *Alexander v. Pac. Greyhound Lines, Inc.*, 65 Ariz. 187, 193, 177 P.2d 229, 233 (1947). But, by requiring that a carrier exercise *more* care than that reasonable under the circumstances of the case, the "highest degree of care" instruction approaches the insurance standard, as virtually

13

every accident could be avoided if the carrier acted differently in some way.

¶23     We therefore conclude that the appropriate standard of care in negligence actions by passengers against common carriers is the objective, reasonable person standard in traditional negligence law.  This "standard provides sufficient flexibility, and leeway, to permit due allowance to be made . . . for all of the particular circumstances of the case which may reasonably affect the conduct required."  Second Restatement § 283 cmt. c. The finder of fact should consider that the defendant is a common carrier for hire when determining whether the carrier "met the standard of care — that is, whether there has been a breach of duty."  *Gipson*, 214 Ariz. at 143 ¶ 10, 150 P.3d at 230.  But if the carrier has acted with reasonable care in light of all the circumstances, it has discharged its duty to its passengers.

## III.

¶24     Brown argues that abandonment of the common carrier doctrine would violate the "anti-abrogation" clause of the Arizona Constitution, which provides that "[t]he right of action to recover damages for injuries shall never be abrogated." Ariz. Const. art. 18, § 6.  She reasons that the doctrine was part of the English common law and adopted in Arizona before statehood in *Hogan*, 13 Ariz. at 37-38, 108 P. at 241, and that

14

we therefore may not abandon the "highest degree of care" standard.

¶25     We reject the argument. We have repeatedly noted that the legislature "is entitled to regulate common law tort actions," as long as a claimant is left "'a reasonable possibility of obtaining legal redress.'" *State Farm Ins. Cos. v. Premier Manufactured Sys., Inc.*, 217 Ariz. 222, 229 ¶ 32, 172 P.3d 410, 417 (2007) (quoting *Boswell v. Phoenix Newspapers, Inc.*, 152 Ariz. 9, 18, 730 P.2d 186, 195 (1986)). Application of the traditional negligence standard of care to actions against common carriers does not violate the anti-abrogation clause because it does not "prevent the possibility of redress for injuries; the claimant remains entirely free to bring his claim against all responsible parties." *Id.* at 229 ¶ 34, 172 P.3d at 417. Today's decision does not prevent a passenger from seeking damages caused by the negligence of a common carrier; we merely clarify that the carrier, like others, departs from its duty to the passenger only when acting unreasonably under all the circumstances.

¶26     Our anti-abrogation jurisprudence normally asks whether a statute unconstitutionally deprives a litigant of access to the courts. *See, e.g.*, *id.* at 228-29 ¶ 32, 172 P.3d at 416-17. Brown argues that by departing from the common carrier rule, this Court itself would violate the anti-

15

abrogation clause. But, if the legislature may regulate common law tort actions as long as reasonable legal redress remains available for those claiming injury, *see id.*, the Constitution imposes no greater restriction when this Court exercises its "obligation to participate in the evolution of tort law so that it may reflect societal and technological changes," *Law v. Superior Court*, 157 Ariz. 147, 156, 755 P.2d 1135, 1144 (1988). "Just as the common law is court-made law based upon the circumstances and conditions of the time, so can the common law be changed by the court when conditions and circumstances change." *Fernandez v. Romo*, 132 Ariz. 447, 449, 646 P.2d 878, 880 (1982).

## IV.

¶27    Brown also argues that if we abandon the common carrier rule, we should do so only prospectively. The general rule, however, is that "Arizona appellate opinions in civil cases operate both retroactively and prospectively." *Law*, 157 Ariz. at 160, 755 P.2d at 1148 (supplemental opinion). The presumption in favor of retroactive application may be overcome if three conditions are present:

1. The opinion establishes a new legal principle by overruling clear and reliable precedent or by deciding an issue whose resolution was not foreshadowed;

2. Retroactive application would adversely affect the purpose behind the new rule; and

16

3. Retroactive application would produce substantially inequitable results.

*Id.*

¶28    Those conditions are not satisfied here. Far from overruling "clear and reliable precedent," our decision was foreshadowed by *Lowrey*, an opinion not a decade old. Indeed, as noted above, no decision of this Court has required a heightened standard of care instruction in a common carrier tort action. Our decision today serves to avoid jury instructions that would be quite difficult to apply, and retroactive application would neither adversely affect this goal nor produce substantially inequitable results.

V.

¶29    For the reasons above, we vacate the memorandum decision of the court of appeals and remand to the superior court for a new trial.

_____

Andrew D. Hurwitz, Vice Chief Justice

CONCURRING:

_____

Rebecca White Berch, Chief Justice

_____

W. Scott Bales, Justice

_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice