Doris Newmayer **WINBORN** et al.,
Appellants,

v.

Nathan Elliot **MAYO**, Appellee.

No. 14706.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 13, 1968.

J. G. Hornberger, Tom M. Goodwin, John E. Fitzgibbon, Laredo, for appellants.

John J. Pichinson, Keys, Russell, Watson & Seaman, M. W. Meredith, Jr., Corpus Christi, for appellee.

KLINGEMAN, Justice.

This is an appeal from an order sustaining a plea of privilege. Plaintiffs, Doris Newmayer Winborn and others, filed suit in the District Court of Webb County, Texas, for damages alleged to have been sustained by the wrongful death of Arthur Coyle Winborn, who was killed in Webb County on November 12, 1966, in a hunting accident. Defendant, Nathan Elliot Mayo, a resident of San Patricio County, Texas, filed a plea of privilege to be sued in the county of his residence. Plaintiffs duly controverted such plea of privilege, alleging that venue was proper in Webb County under §§ 9 and 9a Art. 1995, Vernon's Ann.Civ.St. After a hearing by the court, the trial court entered its order sustaining defendant's plea of privilege.

Plaintiffs' sole point of error is: "The Court erred in sustaining Appellee's plea of privilege because Appellants properly plead and proved by a preponderance of the evidence that this action is based on the negligence of Appellee, the acts or omissions of which occurred in Webb County,

Texas, and were the proximate causes of the death of Arthur Coyle Winborn and of the resultant damages suffered by Appellants, and that, therefore, this action was and is properly brought in Webb County, Texas, under the provisions of Section 9a, Article 1995 V.A.T.S." Under this point plaintiffs seek a reversal and rendition.

On or about November 12, 1966, Arthur Coyle Winborn and defendant, together with others, went to a hunting lease in Webb County. After all of the hunting party but one had arrived, defendant and Winborn left the hunting camp about midnight in a jeep owned and being driven by defendant to look for the missing hunter. While driving around looking for him the jeep ran into a gully and became high-centered and stuck. Defendant, who had been on the same lease in previous years, decided to attempt to walk back to camp, taking with him a flashlight and a Colt 22 magnum pistol. When defendant was about 250 to 300 yards from the jeep he heard the jeep's motor start and he returned to the jeep. After some discussion, it was decided that they would stay in the jeep for the night. While defendant was attempting to get back into the jeep, the pistol discharged and the bullet struck Winborn who died instantly as a result of the bullet wound.

In order to sustain venue in Webb County, it was incumbent upon plaintiffs to establish by a preponderance of the evidence that an act of omission of negligence occurred in Webb County, that such act or omission was that of the defendant, and that such negligence was the proximate cause of plaintiffs' injury. McDonald, Texas Civil Practice, § 4.17.2, pp. 475 et seq.

Plaintiffs assert that the standard of care required in a firearm case is more than reasonable or ordinary care, and is a very high degree of care. We have been unable to find any applicable Texas cases wherein the degree of care required in the use of firearms is set forth. At common

law, where one was injured by the discharge of a gun or other firearms in the hands of another, the action was for trespass vi et armis, and the only defense available was that the defendant was utterly without fault. Annear v. Swartz, 46 Okl. 98, 148 P. 706, L.R.A.1915E 267; 1 Thompson on Negligence, § 779; 12 Am. and Eng.Ency. of Law (2d Ed.) 519; Weaver v. Ward, Hobart, 134. The modern doctrine, however, has modified this rule and places the liability of one who injures another by the use of firearms on the footing of negligence and not on trespass. It is often said that a very high degree of care is required from all persons using firearms in the immediate vicinity of others, regardless of how lawful or innocent such use may be, or that more than ordinary care to prevent injury to others is required. Some courts refer to the degree of care required as a high degree of care; others say that the utmost or highest degree of care must be used to the end that harm may not come to others. More often the requisite degree of care is defined as such care as is commensurate with the dangerous nature of the firearm. 56 Am.Jur., Weapons and Firearms, § 23, p. 1006. The modern tendency of the courts is to apply the general rules of negligence where injury or death has been inflicted by missiles from a firearm. It is sometimes said that the rules of law governing actions for injury caused by the discharge of firearms are not different from the rules governing actions for any injury claimed to have been inflicted by the defendant. Here, as in other cases, the test of liability of the defendant is whether in what he did he failed to exercise reasonable or ordinary care. As in other cases, the reasonable care which persons using firearms are bound to take in order to avoid injury to others is a care proportionate to the probability of injury. See Thompson, supra, § 780; 94 C.J.S. Weapons §§ 26–28.

No findings of fact or conclusions of law were requested or filed by the trial court. Where appellant contests the judg-

ment of a trial court without requesting findings of fact or conclusions of law, the appellate court must assume that the trial court's findings support its judgment and the judgment must be affirmed if there is any evidence of probative force to support it on any theory authorized by law. Construction and General Labor Union Local 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958 (1950); Drexler v. Architectural & Commercial Sales, 375 S.W.2d 550 (Tex. Civ.App.—Corpus Christi 1964, no writ); Jones v. Alvin State Bank, 332 S.W.2d 124 (Tex.Civ.App.—Eastland 1960, no writ); Leaverton v. Sunset Motor Lines, 322 S.W.2d 295 (Tex.Civ.App.—Amarillo 1959, no writ); City of Abilene v. Meek, 311 S.W.2d 654 (Tex.Civ.App.—Eastland 1958, writ ref'd).

A brief review of the evidence is pertinent at this point. The only living eyewitness to this tragedy was the defendant. He testified that he was hunting in an area where there were all kinds of wildlife, wild lions, coyotes, javelinas and rattlesnakes; that a large number of hunters take pistols for protection against such animals as these; that on the night of the accident, when he started towards camp, he took the pistol and flashlight with him chiefly because of rattlesnakes. He testified that the pistol was a single-action revolver; that he was carrying such pistol on safety, which he called the half-cock position; and that the pistol will not fire from a half-cock position. He further testified that the stuck jeep was leaning down to the left and it was necessary to climb up a little to get into it. He stated that on the occasion of the accident after hearing the jeep engine running he returned to the jeep and at the time he started to get into the jeep he had the flashlight in his left hand and pistol in his right hand; that he placed the flashlight on the floorboard of the jeep and was attempting to place the pistol back of the driver's seat, and as he was attempting to get in the jeep his foot slipped and he fell; that Winborn attempted to grab him to keep him from falling and that

while Winborn was attempting to grab him the gun went off; that in his opinion Winborn's attempt to grab him cocked the pistol and it discharged. The only other evidence pertaining to whether defendant was guilty of negligence was the testimony of Mr. Beckelhymer, a gun expert. He testified that he had examined the pistol involved; that it was a Colt single-action 22 magnum pistol, and that he was familiar with this type of pistol; that in such a pistol there are three firing positions insofar as the hammer is concerned; the first position being called the safety, which is the first click, the second position being commonly called the half-cock, which he stated is not a safety position, and the third position is the firing position. He testified, however, that in any partial or full cocked position the only way the pistol could be fired is either by pulling the trigger, or through a good deal of force which would break the mechanism, and that he had carefully examined the pistol, that it was in excellent condition, and that the mechanism was not broken; that in a single-action pistol the only way it can be activated to fire is to pull the hammer back; that in the half-cock position under normal pressure the hammer cannot fire, but that if you apply enough pressure, possibly around 25 lbs., instead of the usual 4 lbs., that you could break the trigger mechanism and make the hammer fire. He further testified that the safest and accepted method of carrying this type of gun, if loaded, is to leave an empty chamber underneath the hammer. In this connection, the testimony of a deputy sheriff who went out to the scene shows that there were 6 shells in the pistol, one fired and five live ones. Mr. Beckelhymer testified that even if the hammer rested on an empty chamber, that if in some manner the hammer was pulled back it would rotate the cylinder and activate the pistol so that when the hammer fell it would discharge the gun and that this same thing would also occur even though the pistol was fully loaded and on the safety position or the half-cock position.

Plaintiffs assert that as a matter of law they proved by a preponderance of evidence that defendant was negligent and that such negligence was the proximate cause of the injuries involved. We have concluded that there was some evidence of a probative value, which evidence was more than a scintilla, to support the trial court's judgment. The judgment of the trial court sustaining defendant's plea of privilege is affirmed.