**SPEED BOAT LEASING, INC.**
**And Paradise Cruises, Inc.**

v.

**Doris Graf ELMER.**

No. 03–0037.

Supreme Court of Texas.

Dec. 19, 2003.

Tom Hermansen, Carlos Villarreal, Hunt, Hermansen, McKibben & Villarreal, L.L.P., Corpus Christi, for petitioner.

Cary Michael Toland, Allison, Law Firm, Brownsville, Richard Otto Burst, Raymondville, Paul Y. Cunningham, Jr., South Padre Island, Gilberto Hinojosa, State of Texas County Court at Law #1, Cameron County, Brownsville, Dana R. Allison, for respondent.

Jonathan Hull, Reagan Burrus Dierksen, Lamon & Bluntzer, PLLC, New Braunfels, for amicus curiae.

PER CURIAM.

We are asked to determine what standard of care applies to the operator of a fifty-two-foot speedboat which offers pleasure or "thrill" rides in the Gulf of Mexico. The court of appeals held that it should be held to the high standard of care associated with common carriers. 89 S.W.3d 633. We disagree. Our traditional common-carrier analysis turns on the business of transportation and whether the primary purpose of the operator in question is, in fact, the business of transporting people or goods. We conclude that the speed boat operator falls outside our definition of a common carrier. We accordingly reverse the court of appeals' judgment and reinstate the trial court's judgment that plaintiff take nothing.

Doris Elmer, a seventy-year-old woman, fractured her spine while riding on the "Gulf Screamer," a boat operated by Speed Boat Leasing. Elmer was given a ride in exchange for allowing the operator's brochures to be placed in the rental office of the condominiums she managed. The "Gulf Screamer" advertised itself as offering "exciting fun packed cruises for all," in which customers would "*THRILL* to a refreshing, exhilarating ride in open waters *SCREAMING* past South Padre Island's beautiful sand beaches."

The captain of the Gulf Screamer testified that he gave a safety lecture before the ride, although Elmer disputes having heard one. Passengers were allegedly told that the ride would be rougher in the front of the boat. Elmer chose to ride up front and failed to tell the boat captain her age or that she had suffered from lower back pain.[1] During the ride, Elmer was bounced around in her seat, causing her spine to fracture. After the accident, she was bedridden for a number of months and wore a brace for several more. She brought suit against the Gulf Screamer's owner, Speed Boat Leasing, and Paradise Gulf Cruises, operator of the boat, for negligence.

The trial court instructed the jury as to simple negligence, refusing Elmer's requested instruction that the jury be instructed to the high standard of care required of common carriers. When the jury found that sixty-five percent of the negligence was attributable to Elmer, the trial court rendered judgment that Elmer take nothing. Tex. Civ. Prac. & Rem. Code ' 33.001. Elmer appealed, claiming that the jury should have been instructed as to the higher standard of care associated with common carriers. The appellate court reversed the trial court's judgment and remanded the case back to the trial court, holding that the higher standard of care owed by common carriers was applicable. The court of appeals denied rehearing, although one justice who was not on

---

1. At trial, defendants introduced evidence, contested by Elmer, that doctors prior to the accident had diagnosed Elmer as having high risk factors for osteoporosis and doctors treating her after the accident had diagnosed osteoporosis itself. Indisputably, Elmer had been treated for back pain and nerve problems over the years prior to the accident.

the original panel dissented from the failure to grant en banc rehearing.

■ We have defined common carriers as "those in the *business* of carrying passengers and goods who hold themselves out for hire by the public." *Mount Pleasant Indep. Sch. Dist. v. Lindburg,* 766 S.W.2d 208, 213 (Tex.1989) (emphasis added). It is well settled that common carriers are held to a higher standard of care when transporting passengers. *Id.; Dallas Ry. & Terminal Co. v. Travis,* 125 Tex. 11, 78 S.W.2d 941, 942 (1935); *see also* Texas Pattern Jury Charges '2.2 cmt. (2002). This Court has defined that standard as "that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances." *Dallas Ry. & Terminal Co.,* 78 S.W.2d at 942. This higher standard is based on the "nature of the *business* of carriage." *Lindburg,* 766 S.W.2d at 213 (emphasis in original). The rationale for holding common carriers to a higher standard is that passengers should feel safe when traveling. *See generally Amarillo v. Tutor,* 267 S.W. 697, 698 (Tex.1924); *I. & G.N. R.R. Co. v. Cocke,* 64 Tex. 151, 158 (Tex.1885); *Waters v. Tex. Elec. Ry.,* 267 S.W. 1005, 1006 (Tex.Civ.App.BDallas 1924, writ dism'd) (each referencing the obligation of providing passengers with safety and convenience in public transportation); *see also Lamb v. B & B Amusements Corp.,* 869 P.2d 926, 930 (Utah 1993) ("Passengers entrust common carriers with their personal safety, have little if any opportunity to protect themselves from harm caused by a common carrier, and pay the carrier for safe transportation. In addition, the public has an important stake in having the public transportation of persons as safe as possible."); *Harlan v. Six Flags Over Ga., Inc.,* 250 Ga. 352, 297 S.E.2d 468, 469 (1982) ("Persons using ordinary transportation devices, such as elevators and buses, normally expect to be carried safely, securely, and without incident to their destination.").

The Texas Transportation Code does not define common carriers, but a predecessor to the current statute defining the duties and liabilities of a common carrier included "railroad companies, and other carriers of passengers, foods, wares, merchandise for hire, within this state, on land, or in boats or vessels on the waters entirely within this state." Acts 1969, 61st Leg., ch. 213, 1969 Tex. Gen. Laws 618 (current version at Tex. Transp. Code. Ann. '5.001). The current statute continues to reference this statement in the revisor's notes. Tex. Transp. Code. Ann. '5.001 revisor's notes. Texas courts have defined a common carrier as "a person who engages in the *transportation* of persons or things from place to place for hire and holds himself or herself out as ready and willing to serve the public in the branch of transportation for which he or she is engaged." 11 Tex. Jur.3d *Carriers* '2 (2002) (emphasis added); *see Howell v. City Towing Assoc., Inc.,* 717 S.W.2d 729, 731 (Tex.App.San Antonio 1986, writ ref'd n.r.e.) ("A common carrier of passengers is one that solicits and operates a public passenger transportation service."). We have stated that the "underlying concept" of a common carrier is "that of a transportation service...." *Lake Transport, Inc., v. R.R. Comm'n of Tex.,* 505 S.W.2d 781, 784 (Tex.1974). Texas statutes on public health define common carriers as "[a]ny licensed firm, corporation or establishment which solicits and operates public freight or passenger *transportation* service." Tex.Rev.Civ. Stat. art. 4477–1 (emphasis added).[2] The term has

---

2. This statute does not apply to the situation at hand, but rather governs what minimum

sanitation and public hygiene conditions must

been held to include railroads, buses, airplanes, taxis, street cars, and other vehicles. *Howell,* 717 S.W.2d at 733.

■ When determining whether someone who provides transportation is a common carrier, we look to their primary function. It must be determined whether the *business* of the entity is public transportation or whether such transportation is "only incidental" to its primary business. *Lindburg,* 766 S.W.2d at 213. For example, this Court held in *Mount Pleasant Independent School District v. Lindburg* that a school district is not in the business of transporting students, but rather of educating them. *Id.* Therefore, school bus drivers are not held to the higher standard of care of a common carrier. *Id.* Another Texas court has held that a tow truck driver is not a common carrier of passengers when passengers whose cars are being towed ride in the tow truck, again because a towing company is primarily in the business of transporting cars, not people. *Howell,* 717 S.W.2d at 733. It may owe a high standard of care in transporting the cars, but not to any people who ride along.

■ Although Speed Boat Leasing transports its passengers across the waters of the Gulf of Mexico, its primary purpose is to entertain, not to transport from place to place. It picks up and returns passengers to the same location, not for any of the other necessary journeys for which public transportation is intended, but merely for pleasure. Passengers board common carriers to get from place to place; passengers board the Gulf Screamer for the ride itself. The Gulf Screamer's purpose, as testified by its captain, "was to supply passengers with an exhilarating fun ride." The fact that it transports people is only incidental to its primary purpose.

Elmer testified that she boarded the Gulf Screamer because the ride was offered to her in the hopes that she would recommend it to spring break tourists who visited her condominium offices. She further testified that she considered it a "sight seeing trip" for her out-of-town friend. But the brochures left in her office to advertise the Gulf Screamer were not simply advertising a way to get around South Padre Island. They clearly indicated that the trip was one for fun and excitement "an experience you'll never forget"

■ Thus, the Gulf Screamer is more analogous to an amusement ride, which we have held to an ordinary standard of care, than a common carrier. An amusement ride is defined by Texas statute as a "mechanical device that carries passengers along, around, or over a fixed or restricted course or within a defined area for the purpose of giving the passengers amusement, pleasure, or excitement." Tex. Occ. Code '2151.002(1). In Texas, amusement ride operators are held to a standard of ordinary care. *See, e.g., Scroggins v. Harlingen,* 131 Tex. 237, 112 S.W.2d 1035, 1038 (1938), *op. on reh'g,* 131 Tex. 237, 249, 114 S.W.2d 853 [3] (addressing new questions, but affirming original opinion as to all issues addressed in original opinion); *Vance v. Obadal,* 256 S.W.2d 139, 140 (Tex. Civ.App.BEl Paso 1953, writ ref'd). In short, amusement ride operators are not common carriers.

The respondent cites *Markham v. Houston Direct Navigation Co.* for the proposition that Texas has held amusement ride operators to a higher standard of care. 73

---

be met by certain public accommodations, including common carriers.

**3.** The Southwest Reporter did not include the rehearing opinion, which can be found only in the Texas Reports.

Tex. 247, 11 S.W. 131, 133 (1889). In that case the plaintiff, a passenger in an excursion tug boat, suffered injuries when the boat collided with a rope that defendant had stretched over the water. *Id.* at 131. In remanding the case for trial against the defendant under an ordinary negligence standard, the Court observed in passing that the tug boat owner owed a "higher degree of care to [its passenger] than did the defendant." *Id.* at 133. The Court never stated, however, what that higher standard was, and this ambiguous reference formed no part of the Court's holding nor a necessary part of its reasoning. As such, it provides little guidance more than a century later as we decide this case.

Although the Gulf Screamer may not fit the statutory definition of an amusement ride, its purpose is the same to give its riders "amusement, pleasure, or excitement." Because its purpose was for a *"THRILL[ING],"* *"SCREAMING"* ride through the Gulf of Mexico for pleasure, it should be evaluated in the same manner as an amusement ride and held to a standard of ordinary care.

The trial court did not err in instructing the jury that the standard of care to be applied was ordinary negligence. Therefore, without hearing oral argument, we grant the petition for review, reverse the judgment of the court of appeals, and reinstate the trial court's judgment that Elmer take nothing. Tex.R.App. P. 59.1.