

# NUMBER 13-08-00541-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MATILDE MUNOZ RODRIGUEZ DE
SANCHEZ, VICENTE SANCHEZ,
AND PAULIN SANCHEZ,** Appellants,

**v.**

**SPORRAN EE, INC. D/B/A EL EXPRESO BUS CO.,** Appellee.

---

**On appeal from the 329th District Court
of Wharton County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Yañez, Benavides, and Vela
Memorandum Opinion by Justice Benavides**

Appellants, Matilde Munoz Rodriguez de Sanchez, Vicente Sanchez, and Paulin Sanchez (collectively "the Sanchezes"), appeal from the trial court's judgment that they take nothing on their wrongful death claims based on the death of Agraciano Sanchez. The jury found that appellee, Sporran EE, Inc. d/b/a El Expreso Bus Co. ("Expreso"), was negligent, but it also found that Agraciano was negligent. The jury apportioned the

negligence and assigned 40% to Expreso and 60% to Agraciano. The trial court, therefore, rendered a take-nothing judgment in Expreso's favor. The Sanchezes appeal, arguing by two issues that (1) the trial court erroneously refused their instruction on a common carrier's duty of care; and (2) the trial court erroneously refused their instruction on negligent undertaking. We affirm.

## I. BACKGROUND[1]

The Sanchezes are the wife and children of Agraciano. On January 10, 2004, Agraciano boarded an Expreso bus in Rosenberg, Texas, headed for Brownsville, Texas. Agraciano was seventy-one years old and spoke Spanish. The bus driver, Hilario Mendoza, noticed that Agraciano appeared to be intoxicated at the time he boarded the bus, yet he allowed him to do so anyway.

Shortly after departing Rosenberg, Mendoza called Expreso's dispatcher to report that Agraciano was drunk and causing a disturbance with another passenger. According to the Expreso training materials, the drivers were taught to isolate problem passengers and to involve the legal authorities. The Expreso handbook states that a law enforcement response is always required when a passenger-on-passenger attack occurs. Mendoza asked the dispatcher to call the local police in the next city, El Campo, to report Agraciano as being an intoxicated passenger. Instead, the dispatcher told Mendoza to call the police. Neither the dispatcher nor Mendoza, however, placed a call to the police. Mendoza claimed he did not want to get Agraciano into trouble.

At approximately 9:55 p.m., Mendoza exited the highway onto the feeder road at El

---

[1] Expreso does not challenge the Sanchezes' statement of facts. Therefore, we accept them as true. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). Because this is a memorandum opinion and the parties are familiar with the facts, we will only discuss the facts insofar as they relate to the ultimate disposition of this appeal. *See id.* at R. 47.1.

Campo, Texas, where he passed a motel and proceeded some distance to a closed bus stop. Mendoza noticed that Agraciano's speech was slurred. Mendoza decided to eject Agraciano from the bus and told him that he could not continue traveling on the bus. Mendoza testified that Agraciano could not communicate with him except to repeat, "To Brownsville, to Brownsville." Mendoza told Agraciano to call someone to pick him up, then he left Agraciano beside the closed bus stop, which was next door to a convenience store. Mendoza did not see if Agraciano entered the convenience store.

Mendoza testified that a closed bus stop was not a safe place to leave a passenger, and he stated that he would not have left Agraciano at the convenience store if it were closed. Mendoza, however, failed to check the posted store hours to see whether the store was closing.

Agraciano entered the convenience store next to the closed bus stop, but no one there could speak Spanish, and Agraciano did not speak English. The store clerk noticed that Agraciano's walk was unsteady, his speech was slurred, and that he had the strong smell of alcohol. The store closed at its regular time of 10:00 p.m., about five or ten minutes after Agraciano entered the store. The store employees, who were unable to communicate with Agraciano, put him outside the door and left him sitting on his bag.

Later, Agraciano walked across the highway to the shoulder of the Eastbound lane of U.S. Highway 59, almost directly across from the store, where he was fatally struck by an automobile. At approximately 11:46 p.m., an El Campo police officer was dispatched to the scene of the fatality. The conditions at the time of the accident were foggy and dark, and there were no street lights in the area where Agraciano's body was found. EMS was called, and the medical examiner reported that Agraciano's blood-alcohol content was almost three times the legal limit.

3

At the conclusion of trial, the court prepared its charge to the jury and submitted the charge to the attorneys for their objections, with the following as Question 1, asking whether Expreso or Agraciano were negligent, along with several instructions:

> Did the negligence, if any, of those named below proximately cause the occurrence or injury in question?
>
> "Negligence," when used with respect to the conduct of EL EXPRESO, means failure to use a high degree of care, that is, failing to do that which a very cautious, competent, and prudent person would have done under the same or similar circumstances or doing that which a very cautious, competent, and prudent person would not have done under the same or similar circumstances.
>
> "High degree of care" means that degree of care that would have been used by a very cautious, competent, and prudent person under the same or similar circumstances.
>
> "Proximate cause", when used with respect to the conduct of EL EXPRESO, means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using a high degree of care would have foreseen that the event, or some other similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.
>
> You are instructed that common carriers are under the duty to discharge their passengers into a reasonably safe place and when so discharged the relationship is terminated.

Question 1 also included instructions regarding Agraciano's negligence.

.During the charge conference, the Sanchezes requested that the trial court include the following additional instruction to the jury defining "high degree of care":

> A bus company, as a carrier of passengers, is under a duty to exercise such a high degree of foresight as to the possible dangers and such a high degree of prudence in guarding against them as would be used by a very cautious, prudent and competent man under same or similar circumstances.

Furthermore, the Sanchezes requested the following instruction on negligent undertaking:

> You are instructed that Sporran EE, Inc. d/b/a El Expreso Bus Co. was negligent if (1) it undertook to perform services that it knew or should have

4

known were necessary for the decedent's protection, (2) Sporran EE, Inc. d/b/a El Expreso Bus Co. failed to exercise reasonable care in performing those services, and either (3) Agraciano Sanchez relied upon Sporran EE, Inc. d/b/a El Expreso Bus Co.'s performance, or (4) Sporran EE, Inc. d/b/a El Expreso Bus Co.'s performance increased the decedent's risk of harm.

The trial court refused both requests.

The jury found that both Expreso and Agraciano were negligent. In Question 2, the jury apportioned liability between Expreso and Agraciano, assigning 40% of fault to Expreso and 60% of fault to Agraciano. Question 3, the first damages question, contained a conditional instruction at the beginning advising the jury to answer the following questions if the jury said that Agraciano was not negligent or if it assigned 50% or less to Agraciano. The jury did not answer the damages questions. The trial court rendered a take-nothing judgment in favor of Expreso. This appeal ensued.

## II. Charge Error

By their first issue, the Sanchezes argue that the trial court erred by refusing their instruction defining "high degree of care." By their second issue, the Sanchezes argue that the trial court erred by refusing their negligent undertaking instruction. We disagree.

### A. Standard of Review and Applicable Law

When crafting the jury charge, the trial court must "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. We review a trial court's refusal to submit an instruction under an abuse of discretion standard. See Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam). "When a trial court refuses to submit a requested instruction on an issue raised by the pleadings and evidence, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict." Id.

Trial courts are afforded considerable discretion when submitting instructions, and

5

although trial courts must explain any technical or legal terms to the jury, they possess wide discretion to determine whether such explanations are sufficient. *Lumbermans Mut. Cas. Co. v. Garcia*, 758 S.W.2d 893, 894 (Tex. App.–Corpus Christi 1988, writ denied); *K-Mart Corp. v. Trottie*, 677 S.W.2d 632, 636 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.). A trial court abuses its discretion if it fails to follow guiding rules and principles. *Columbia Rio Grande Healthcare, L.P. v. Hawley,* 284 S.W.3d 851, 856 (Tex. 2009).

We will not reverse a jury verdict for the trial court's refusal to submit an instruction unless the refusal probably caused the rendition of an improper judgment or probably prevented the complaining party from presenting the case on appeal. *Id*.; *Shupe*, 192 S.W.3d at 579. Charge error will generally be harmful if it relates to a "contested, critical issue." *Hawley*, 284 S.W.3d at 856. However, "when the findings of the jury in answer to other issues are sufficient to support the judgment," error in refusing an instruction is harmless. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980); *see also City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995).

## B.    High Degree of Care

By their first issue, the Sanchezes argue that the trial court's refusal to submit their definition of "high degree of care" resulted in an erroneous jury charge that did not state the true standard of care for a common carrier such as Expreso. They rely on a Texas Supreme Court opinion issued in 1880, *International & Great Northern Railway Co. v. Halloren*, in which the court defined the duty of a railroad company as follows:

> Railroad companies, however, are not insurers of the safety of their passengers further than could be required by the exercise of such a *high degree of foresight* as to *possible dangers,* and such a high degree of *prudence in guarding against them,* as would be used by very cautious, prudent, and competent persons under similar circumstances.

53 Tex. 46, 1880 WL 9281, at *4 (1880) (emphasis added). The Sanchezes argue that,

6

by omitting the language stating that Expreso had to exercise a "high degree of foresight as to possible dangers, and such a high degree of prudence in guarding against them," the trial court's instruction on high degree of care incompletely stated the standard of care. We disagree.

The instruction submitted by the trial court in this case is the instruction recommended by the Texas Pattern Jury Charge. *See* TEX. PATTERN JURY CHARGE 2.2 (2008). Recently, in *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 212 (Tex. 2003), the Texas Supreme Court implicitly approved the language in the Pattern Jury Charge and expressly stated that the standard of care for a common carrier is "'that degree of care that would be exercised by a very cautious and prudent person under the same or similar circumstances,'" which is exactly how the trial court charged the jury in this case. *Id.* (quoting *Dallas Ry. & Terminal Co. v. Travis*, 78 S.W.2d 941, 942 (1935)). Thus, we disagree that the language submitted to the trial court is an incomplete or incorrect statement of the law, and the trial court did not abuse its discretion in refusing the additional language. *See id.*

Moreover, the Sanchezes have failed to prove that the refusal to submit the additional language probably caused the rendition of an improper judgment. The Sanchezes argue that without the additional language they proposed, the jury had "no way of knowing" that "high degree of care" means "exercising foresight as to possible dangers and such a high degree of prudence in guarding against them." Again, we disagree.

The failure to submit an instruction is harmless if the substance of the requested instruction is included elsewhere in the court's charge. *See Boatland of Houston, Inc.*, 609 S.W.2d at 750; *see also Alvarado*, 897 S.W.2d at 752; *Mo. Pac. R.R. Co. v. Lemon*, 861 S.W.2d 501, 515 (Tex. App.–Houston [14th Dist.] 1993, writ dism'd). The language that

7

the Sanchezes rely upon is subsumed within the duty instruction actually given, which requires the degree of care that would be exercised by a cautious, competent, and prudent person, and the proximate cause definition, which incorporates the foreseeability requirement: "In order to be a proximate cause, the act or omission complained of must be such that a person using a high degree of care would have foreseen that the event, or some other similar event, might reasonably result therefrom." *See Lemon*, 861 S.W.2d at 505 (holding that the trial court did not err in refusing to submit a statutory standard of care, which the court held was the same or substantially the same as the standard of ordinary care). This language instructed the jury that Expreso would be liable for dangers that it could foresee but failed to guard against, to the extent a cautious, competent, and prudent person would have done so, just as requested in the refused instruction. Accordingly, we overrule the Sanchezes' first issue.

## C.    Negligent Undertaking

By their second issue, the Sanchezes argue that the trial court erred by refusing to instruct the jury on their negligent undertaking theory. Expreso argues that the trial court did not abuse its discretion in refusing the instruction because a negligent undertaking theory is not appropriate when a particular duty or contractual obligation already exists and liability can be governed within that standard. We agree.

A claim for negligent undertaking is defined as follows:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a)    his failure to exercise such care increases the risk of such harm, or

8

> (b)    the harm is suffered because of the other's reliance upon the undertaking.

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 838 (Tex. 2000) (citing RESTATEMENT (SECOND) OF TORTS § 323 (1965)). The Sanchezes' proposed instruction, however, substituted "high degree of care" for "ordinary care." We note that there are no cases applying a negligent undertaking theory to a common carrier in this manner.

In *Duke v. Philip Johnson/Alan Ritchie Architects P.C.,* the Fort Worth Court of Appeals held that architects who undertook to inspect Fort Worth's Water Gardens, but whose contract with the City of Fort Worth defined the scope of their duties and did not include a safety assessment, could not be liable to the survivors of persons who drowned in the Water Gardens under a negligent undertaking theory. 252 S.W.3d 586, 598-99 (Tex. App.–Fort Worth 2008, pet. denied). The court held that because the architects were merely attempting to comply with their contractual obligations, and nothing in the record showed "an affirmative act undertaken by Johnson/Ritchie or Johantgen that broadened the scope of their duty," a negligent undertaking theory did not apply. *Id.*

Although Expreso's duty in this case was not contractual but imposed by the common law, we find *Dukes* persuasive. In this case, Expreso's duty was that of a common carrier, with a high degree of care that was specifically set out in the jury charge. There is nothing in the record, and in fact, no allegation by the Sanchezes, that Expreso took any affirmative actions to undertake any additional duties; thus, the negligent undertaking theory does not apply. *Id.*

The Sanchezes rely on *Torrington Co v. Stutzman*, arguing that in that case, the Texas Supreme Court held that a broad-form negligence question erroneously omitted certain elements of the plaintiffs' negligence claim. 46 S.W.3d at 837-38. In that case,

9

however, the defendant claimed that it did not owe any duty, while the plaintiffs claimed that the defendant had "engaged in an undertaking." *Id.* at 839. The defendant then complained on appeal that the broad-form negligence submission allowed the jury to hold it liable regardless of whether the jury found that (1) the defendant undertook to perform services, when it knew or should have known that its services were necessary to protect others; (2) anyone relied on the defendant's undertaking; or (3) whether the defendant's performance of its undertaking increased the plaintiffs' risk of harm. *Id.* at 838.

In this case, however, it is undisputed that Expreso owed the duty of a common carrier to exercise a high degree of care; thus, it was unnecessary to secure these additional findings in order to impose a duty on Expreso. In fact, the high degree of care standard submitted to the jury in this case was more onerous than the one submitted by the Sanchezes under their negligent undertaking theory. Under the circumstances, we hold that it is not an abuse of discretion to refuse to submit a negligent undertaking theory when the defendant's duty is established as that of a common carrier. We overrule the Sanchezes' second issue.

### III. CONCLUSION

Having overruled both of the Sanchezes' issues, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
31st day of August, 2010.

10