NUMBER 13-08-00541-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


MATILDE MUNOZ RODRIGUEZ DE

SANCHEZ, VICENTE SANCHEZ, 

AND PAULIN SANCHEZ, Appellants,


v.


SPORRAN EE, INC. D/B/A EL EXPRESO BUS CO., Appellee.

 




On appeal from the 329th District Court


of Wharton County, Texas.


 




MEMORANDUM OPINION



Before Justices Yañez, Benavides, and Vela


Memorandum Opinion by Justice Benavides


 Appellants, Matilde Munoz Rodriguez de Sanchez, Vicente Sanchez, and Paulin
Sanchez (collectively "the Sanchezes"), appeal from the trial court's judgment that they
take nothing on their wrongful death claims based on the death of Agraciano Sanchez. 
The jury found that appellee, Sporran EE, Inc. d/b/a El Expreso Bus Co. ("Expreso"), was
negligent, but it also found that Agraciano was negligent. The jury apportioned the
negligence and assigned 40% to Expreso and 60% to Agraciano. The trial court, therefore,
rendered a take-nothing judgment in Expreso's favor. The Sanchezes appeal, arguing by
two issues that (1) the trial court erroneously refused their instruction on a common
carrier's duty of care; and (2) the trial court erroneously refused their instruction on
negligent undertaking. We affirm.

I. Background (1)

 The Sanchezes are the wife and children of Agraciano. On January 10, 2004,
Agraciano boarded an Expreso bus in Rosenberg, Texas, headed for Brownsville, Texas. 
Agraciano was seventy-one years old and spoke Spanish. The bus driver, Hilario
Mendoza, noticed that Agraciano appeared to be intoxicated at the time he boarded the
bus, yet he allowed him to do so anyway. 

 Shortly after departing Rosenberg, Mendoza called Expreso's dispatcher to report
that Agraciano was drunk and causing a disturbance with another passenger. According
to the Expreso training materials, the drivers were taught to isolate problem passengers
and to involve the legal authorities. The Expreso handbook states that a law enforcement
response is always required when a passenger-on-passenger attack occurs. Mendoza
asked the dispatcher to call the local police in the next city, El Campo, to report Agraciano
as being an intoxicated passenger. Instead, the dispatcher told Mendoza to call the police. 
Neither the dispatcher nor Mendoza, however, placed a call to the police. Mendoza
claimed he did not want to get Agraciano into trouble.

 At approximately 9:55 p.m., Mendoza exited the highway onto the feeder road at El
Campo, Texas, where he passed a motel and proceeded some distance to a closed bus
stop. Mendoza noticed that Agraciano's speech was slurred. Mendoza decided to eject
Agraciano from the bus and told him that he could not continue traveling on the bus. 
Mendoza testified that Agraciano could not communicate with him except to repeat, "To
Brownsville, to Brownsville." Mendoza told Agraciano to call someone to pick him up, then
he left Agraciano beside the closed bus stop, which was next door to a convenience store. 
Mendoza did not see if Agraciano entered the convenience store.

 Mendoza testified that a closed bus stop was not a safe place to leave a passenger,
and he stated that he would not have left Agraciano at the convenience store if it were
closed. Mendoza, however, failed to check the posted store hours to see whether the store
was closing. 

 Agraciano entered the convenience store next to the closed bus stop, but no one
there could speak Spanish, and Agraciano did not speak English. The store clerk noticed
that Agraciano's walk was unsteady, his speech was slurred, and that he had the strong
smell of alcohol. The store closed at its regular time of 10:00 p.m., about five or ten
minutes after Agraciano entered the store. The store employees, who were unable to
communicate with Agraciano, put him outside the door and left him sitting on his bag.

 Later, Agraciano walked across the highway to the shoulder of the Eastbound lane
of U.S. Highway 59, almost directly across from the store, where he was fatally struck by
an automobile. At approximately 11:46 p.m., an El Campo police officer was dispatched
to the scene of the fatality. The conditions at the time of the accident were foggy and dark,
and there were no street lights in the area where Agraciano's body was found. EMS was
called, and the medical examiner reported that Agraciano's blood-alcohol content was
almost three times the legal limit.

 At the conclusion of trial, the court prepared its charge to the jury and submitted the
charge to the attorneys for their objections, with the following as Question 1, asking
whether Expreso or Agraciano were negligent, along with several instructions:

 Did the negligence, if any, of those named below proximately cause
the occurrence or injury in question?

 

 "Negligence," when used with respect to the conduct of EL
EXPRESO, means failure to use a high degree of care, that is, failing to do
that which a very cautious, competent, and prudent person would have done
under the same or similar circumstances or doing that which a very cautious,
competent, and prudent person would not have done under the same or
similar circumstances.

 

 "High degree of care" means that degree of care that would have
been used by a very cautious, competent, and prudent person under the
same or similar circumstances.

 

 "Proximate cause", when used with respect to the conduct of EL
EXPRESO, means that cause which, in a natural and continuous sequence,
produces an event, and without which cause such event would not have
occurred. In order to be a proximate cause, the act or omission complained
of must be such that a person using a high degree of care would have
foreseen that the event, or some other similar event, might reasonably result
therefrom. There may be more than one proximate cause of an event.

 

 You are instructed that common carriers are under the duty to
discharge their passengers into a reasonably safe place and when so
discharged the relationship is terminated.


Question 1 also included instructions regarding Agraciano's negligence. 


 .During the charge conference, the Sanchezes requested that the trial court include
the following additional instruction to the jury defining "high degree of care": 

 A bus company, as a carrier of passengers, is under a duty to exercise such
a high degree of foresight as to the possible dangers and such a high degree
of prudence in guarding against them as would be used by a very cautious,
prudent and competent man under same or similar circumstances.


Furthermore, the Sanchezes requested the following instruction on negligent undertaking:

 You are instructed that Sporran EE, Inc. d/b/a El Expreso Bus Co. was
negligent if (1) it undertook to perform services that it knew or should have
known were necessary for the decedent's protection, (2) Sporran EE, Inc.
d/b/a El Expreso Bus Co. failed to exercise reasonable care in performing
those services, and either (3) Agraciano Sanchez relied upon Sporran EE,
Inc. d/b/a El Expreso Bus Co.'s performance, or (4) Sporran EE, Inc. d/b/a
El Expreso Bus Co.'s performance increased the decedent's risk of harm.


The trial court refused both requests. 

 The jury found that both Expreso and Agraciano were negligent. In Question 2, the
jury apportioned liability between Expreso and Agraciano, assigning 40% of fault to
Expreso and 60% of fault to Agraciano. Question 3, the first damages question, contained
a conditional instruction at the beginning advising the jury to answer the following questions
if the jury said that Agraciano was not negligent or if it assigned 50% or less to Agraciano. 
The jury did not answer the damages questions. The trial court rendered a take-nothing
judgment in favor of Expreso. This appeal ensued.

II. Charge Error

 By their first issue, the Sanchezes argue that the trial court erred by refusing their
instruction defining "high degree of care." By their second issue, the Sanchezes argue that
the trial court erred by refusing their negligent undertaking instruction. We disagree.

A. Standard of Review and Applicable Law

 When crafting the jury charge, the trial court must "submit such instructions and
definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. 
We review a trial court's refusal to submit an instruction under an abuse of discretion
standard. See Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam). 
"When a trial court refuses to submit a requested instruction on an issue raised by the
pleadings and evidence, the question on appeal is whether the request was reasonably
necessary to enable the jury to render a proper verdict." Id. 

 Trial courts are afforded considerable discretion when submitting instructions, and
although trial courts must explain any technical or legal terms to the jury, they possess
wide discretion to determine whether such explanations are sufficient. Lumbermans Mut.
Cas. Co. v. Garcia, 758 S.W.2d 893, 894 (Tex. App.-Corpus Christi 1988, writ denied); K-Mart Corp. v. Trottie, 677 S.W.2d 632, 636 (Tex. App.-Houston [1st Dist.] 1984, writ ref'd
n.r.e.). A trial court abuses its discretion if it fails to follow guiding rules and principles.
Columbia Rio Grande Healthcare, L.P. v. Hawley, 284 S.W.3d 851, 856 (Tex. 2009). 

 We will not reverse a jury verdict for the trial court's refusal to submit an instruction
unless the refusal probably caused the rendition of an improper judgment or probably
prevented the complaining party from presenting the case on appeal. Id.; Shupe, 192
S.W.3d at 579. Charge error will generally be harmful if it relates to a "contested, critical
issue." Hawley, 284 S.W.3d at 856. However, "when the findings of the jury in answer to
other issues are sufficient to support the judgment," error in refusing an instruction is
harmless. Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 750 (Tex. 1980); see also
City of Brownsville v. Alvarado, 897 S.W.2d 750, 752 (Tex. 1995). 

B. High Degree of Care

 By their first issue, the Sanchezes argue that the trial court's refusal to submit their
definition of "high degree of care" resulted in an erroneous jury charge that did not state
the true standard of care for a common carrier such as Expreso. They rely on a Texas
Supreme Court opinion issued in 1880, International & Great Northern Railway Co. v.
Halloren, in which the court defined the duty of a railroad company as follows:

 Railroad companies, however, are not insurers of the safety of their
passengers further than could be required by the exercise of such a high
degree of foresight as to possible dangers, and such a high degree of
prudence in guarding against them, as would be used by very cautious,
prudent, and competent persons under similar circumstances. 


53 Tex. 46, 1880 WL 9281, at *4 (1880) (emphasis added). The Sanchezes argue that,
by omitting the language stating that Expreso had to exercise a "high degree of foresight
as to possible dangers, and such a high degree of prudence in guarding against them," the
trial court's instruction on high degree of care incompletely stated the standard of care. We
disagree.

 The instruction submitted by the trial court in this case is the instruction
recommended by the Texas Pattern Jury Charge. See Tex. Pattern Jury Charge 2.2
(2008). Recently, in Speed Boat Leasing, Inc. v. Elmer, 124 S.W.3d 210, 212 (Tex. 2003),
the Texas Supreme Court implicitly approved the language in the Pattern Jury Charge and
expressly stated that the standard of care for a common carrier is "'that degree of care that
would be exercised by a very cautious and prudent person under the same or similar
circumstances,'" which is exactly how the trial court charged the jury in this case. Id.
(quoting Dallas Ry. & Terminal Co. v. Travis, 78 S.W.2d 941, 942 (1935)). Thus, we
disagree that the language submitted to the trial court is an incomplete or incorrect
statement of the law, and the trial court did not abuse its discretion in refusing the
additional language. See id.

 Moreover, the Sanchezes have failed to prove that the refusal to submit the
additional language probably caused the rendition of an improper judgment. The
Sanchezes argue that without the additional language they proposed, the jury had "no way
of knowing" that "high degree of care" means "exercising foresight as to possible dangers
and such a high degree of prudence in guarding against them." Again, we disagree. 

 The failure to submit an instruction is harmless if the substance of the requested
instruction is included elsewhere in the court's charge. See Boatland of Houston, Inc., 609
S.W.2d at 750; see also Alvarado, 897 S.W.2d at 752; Mo. Pac. R.R. Co. v. Lemon, 861
S.W.2d 501, 515 (Tex. App.-Houston [14th Dist.] 1993, writ dism'd). The language that
the Sanchezes rely upon is subsumed within the duty instruction actually given, which
requires the degree of care that would be exercised by a cautious, competent, and prudent
person, and the proximate cause definition, which incorporates the foreseeability
requirement: "In order to be a proximate cause, the act or omission complained of must
be such that a person using a high degree of care would have foreseen that the event, or
some other similar event, might reasonably result therefrom." See Lemon, 861 S.W.2d at
505 (holding that the trial court did not err in refusing to submit a statutory standard of care,
which the court held was the same or substantially the same as the standard of ordinary
care). This language instructed the jury that Expreso would be liable for dangers that it
could foresee but failed to guard against, to the extent a cautious, competent, and prudent
person would have done so, just as requested in the refused instruction. Accordingly, we
overrule the Sanchezes' first issue. 

C. Negligent Undertaking 

 By their second issue, the Sanchezes argue that the trial court erred by refusing to
instruct the jury on their negligent undertaking theory. Expreso argues that the trial court
did not abuse its discretion in refusing the instruction because a negligent undertaking
theory is not appropriate when a particular duty or contractual obligation already exists and
liability can be governed within that standard. We agree.

 A claim for negligent undertaking is defined as follows: 

 One who undertakes, gratuitously or for consideration, to render services to
another which he should recognize as necessary for the protection of the
other's person or things, is subject to liability to the other for physical harm
resulting from his failure to exercise reasonable care to perform his
undertaking, if 


 (a) his failure to exercise such care increases the risk of such harm, or 

 

 (b) the harm is suffered because of the other's reliance upon the
undertaking.


Torrington Co. v. Stutzman, 46 S.W.3d 829, 838 (Tex. 2000) (citing Restatement
(Second) of Torts § 323 (1965)). The Sanchezes' proposed instruction, however,
substituted "high degree of care" for "ordinary care." We note that there are no cases
applying a negligent undertaking theory to a common carrier in this manner.

 In Duke v. Philip Johnson/Alan Ritchie Architects P.C., the Fort Worth Court of
Appeals held that architects who undertook to inspect Fort Worth's Water Gardens, but
whose contract with the City of Fort Worth defined the scope of their duties and did not
include a safety assessment, could not be liable to the survivors of persons who drowned
in the Water Gardens under a negligent undertaking theory. 252 S.W.3d 586, 598-99
(Tex. App.-Fort Worth 2008, pet. denied). The court held that because the architects were
merely attempting to comply with their contractual obligations, and nothing in the record
showed "an affirmative act undertaken by Johnson/Ritchie or Johantgen that broadened
the scope of their duty," a negligent undertaking theory did not apply. Id.

 Although Expreso's duty in this case was not contractual but imposed by the
common law, we find Dukes persuasive. In this case, Expreso's duty was that of a
common carrier, with a high degree of care that was specifically set out in the jury charge. 
There is nothing in the record, and in fact, no allegation by the Sanchezes, that Expreso
took any affirmative actions to undertake any additional duties; thus, the negligent
undertaking theory does not apply. Id. 

 The Sanchezes rely on Torrington Co v. Stutzman, arguing that in that case, the
Texas Supreme Court held that a broad-form negligence question erroneously omitted
certain elements of the plaintiffs' negligence claim. 46 S.W.3d at 837-38. In that case,
however, the defendant claimed that it did not owe any duty, while the plaintiffs claimed
that the defendant had "engaged in an undertaking." Id. at 839. The defendant then
complained on appeal that the broad-form negligence submission allowed the jury to hold
it liable regardless of whether the jury found that (1) the defendant undertook to perform
services, when it knew or should have known that its services were necessary to protect
others; (2) anyone relied on the defendant's undertaking; or (3) whether the defendant's
performance of its undertaking increased the plaintiffs' risk of harm. Id. at 838. 

 In this case, however, it is undisputed that Expreso owed the duty of a common
carrier to exercise a high degree of care; thus, it was unnecessary to secure these
additional findings in order to impose a duty on Expreso. In fact, the high degree of care
standard submitted to the jury in this case was more onerous than the one submitted by
the Sanchezes under their negligent undertaking theory. Under the circumstances, we
hold that it is not an abuse of discretion to refuse to submit a negligent undertaking theory
when the defendant's duty is established as that of a common carrier. We overrule the
Sanchezes' second issue. 

III. Conclusion

 Having overruled both of the Sanchezes' issues, we affirm the trial court's judgment.


 _______________________________

 GINA M. BENAVIDES,

 Justice

Delivered and filed the

31st day of August, 2010.
1. Expreso does not challenge the Sanchezes' statement of facts. Therefore, we accept them as true. 
See Tex. R. App. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party
contradicts them."). Because this is a memorandum opinion and the parties are familiar with the facts, we
will only discuss the facts insofar as they relate to the ultimate disposition of this appeal. See id. at R. 47.1.