# IN THE SUPREME COURT OF TEXAS

═══════════════

NO. 18-0458

═══════════════

VIA METROPOLITAN TRANSIT, PETITIONER,

v.

CURTIS MECK, RESPONDENT

═══════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════════

CHIEF JUSTICE HECHT, joined by JUSTICE GUZMAN, JUSTICE DEVINE, and JUSTICE BLAND, concurring.

The common law rule that common carriers owe their passengers a high degree of care "that would be exercised by a very cautious and prudent person under the same or similar circumstances"[1] is an anachronism that Texas should abandon, as other courts[2] and the

---

[1] *Speed Boat Leasing, Inc. v. Elmer*, 124 S.W.3d 210, 212 (Tex. 2003) (per curiam) (quoting *Dallas Ry. & Terminal Co. v. Travis*, 78 S.W.2d 941, 942 (Tex. 1935)).

[2] *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1109 (Ariz. 2012); *Bethel v. N.Y. City Transit Auth.*, 703 N.E.2d 1214, 1218 (N.Y. 1998); *Sebastian v. D.C.*, 636 A.2d 958, 962 (D.C. 1994); *Frederick v. City of Detroit, Dep't of St. Rys.*, 121 N.W.2d 918, 922 (Mich. 1963); *Union Traction Co. of Ind. v. Berry*, 121 N.E. 655, 658 (Ind. 1919).

*Restatement* have.[3] The rule was widely adopted in the United States in the 19th century during the early days of motorized public transportation, largely regarded as "ultrahazardous".[4] The rule's rationale reflects its historical context. In 1887, in a case involving a street railway that ran over a 19-month-old child on its tracks, this Court wrote that "a carrier of passengers is bound to exercise a high degree of care" and "the highest degree of diligence" because of "the hazardous character of the business, and the fact that human life is imperiled by it."[5] Much has changed. The U.S. Department of Transportation reports that in 2017, transit riders made 10.1 billion trips[6] with 241 fatalities[7]—about one death every 42 million trips.

But the rule's analytical problems are the principal reason to abandon it. As a general rule, "[a] person acts negligently if the person does not exercise reasonable care under all the circumstances."[8] But also, "[a]n actor in a special relationship with another owes the other a duty

---

[3] RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 40(a) (2010); RESTATEMENT (SECOND) OF TORTS § 314A(1) (1965).

[4] *See Nunez*, 271 P.3d at 1109; *Bethel*, 703 N.E.2d at 1216 (noting the "primitive safety features" of steam railroads).

[5] *Galveston City Ry. Co. v. Hewitt*, 3 S.W. 705, 707–708 (Tex. 1887) (stating the duty of common carriers "springs" from the "hazardous character of the [transportation] business, and the fact that human life is imperiled by it").

[6] U.S. DEP'T. OF TRANSP. BUREAU OF TRANSP. STATISTICS, TRANSPORTATION STATISTICS ANNUAL REPORT 1-1 (2018), https://www.bts.dot.gov/sites/bts.dot.gov/files/docs/browse-statistical-products-and-data/transportation-statistics-annual-reports/Preliminary-TSAR-Full-2018-a.pdf.

[7] *Id.* at 6–9.

[8] RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 3; RESTATEMENT (SECOND) OF TORTS § 283 ("Unless the actor is a child, the standard of conduct to which he must conform to avoid being negligent is that of a reasonable man under like circumstances."); *Union Pac. R.R. Co. v. Nami*, 498 S.W.3d 890, 896 (Tex. 2016) ("[N]egligence means the failure to use ordinary care—failing to do what a reasonable person like the defendant would have done under the same or similar circumstances—to protect against unreasonable risk of harm.").

of reasonable care with regard to risks that arise within the scope of the relationship."[9] One such relationship is "a common carrier with its passengers".[10] Unquestionably, a common carrier's duty of reasonable care to its passengers is not the same as that of a private driver taking a friend on an errand. The risks that arise in a common carrier's operation inform its duty. A public transit operator must act with the reasonable care such operators observe. But to say that the reasonable care required of a common carrier is "higher" than the reasonable care required of others transporting passengers is a useless and potentially misleading abstraction.

Physicians must exercise ordinary care in the circumstances.[11] "The circumstances to be considered include, but are not limited to, the expertise of and means available to the physician--defendant, the health of the patient, and the state of medical knowledge."[12] "[T]he traditional reasonable-person standard [takes] into account both the knowledge and skills of an ordinary person *and* 'such superior attention, perception, memory, knowledge, intelligence, and judgment as the actor himself has.'"[13] The standard applies differently to a neurosurgeon performing brain surgery than to a clinician treating scrapes and bruises. But it is the same standard. It is not higher for one or lower for the other. For both, it is reasonable care under the circumstances.

---

[9] RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 40(a); RESTATEMENT (SECOND) OF TORTS § 314A; *see also Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 504 (Tex. 2017) ("a special relationship may sometimes give rise to a duty to aid or protect others").

[10] RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 40(a); RESTATEMENT (SECOND) OF TORTS § 314A(1).

[11] *Jackson v. Axelrad*, 221 S.W.3d 650, 655 (Tex. 2007).

[12] *Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex. 1977).

[13] *Jackson*, 221 S.W.2d at 655–656 (quoting RESTATEMENT (SECOND) OF TORTS § 289).

"The [reasonable-care] standard provides sufficient flexibility, and leeway, to permit due allowance to be made . . . for all of the particular circumstances of the case which may reasonably affect the conduct required."[14] In other words, the ordinary negligence standard "necessarily takes into account" all the circumstances, which include, in the case of common carriers, any dangers intrinsic to public transportation and the passenger's "dependence upon the carrier".[15]

Texas courts have uniformly rejected referring to reasonable care for special risks as a higher duty of care. In *West Texas Utilities v. Renner*, the Texas Commission of Appeals held that "ordinary care" accurately described a utility's duty to maintain a safe workplace even when the risks to employees were great.[16]

> In applying the term "ordinary care" to a given state of facts, Judge Sharp, of the Commission of Appeals, in *Dallas Railway & Terminal Co. v. Bankston*, 51 S.W.(2d) 304, said the meaning of the common-law rule of ordinary care is elastic enough to meet all emergencies; the amount of care depends upon the exigency confronted. It may require one thing to be done at one place, and something else at another place; the degree of care must be such as a person of ordinary prudence would exercise under like circumstances.[17]

Citing *Renner*, the court in *Wendell v. Central Power & Light Co.* noted that while a utility company's duty of care is "commensurate with the danger" presented by its operations, that

---

[14] RESTATEMENT (SECOND) OF TORTS § 283 cmt. c.

[15] *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1109 (Ariz. 2012).

[16] 53 S.W.2d 451, 453–454 (Tex. Comm'n App. 1932, holding approved).

[17] *Id.* at 454–455.

4

"standard does not impose a higher duty of care, it merely more fully defines what is ordinary care under the facts presented."[18]

In *Prather v. Brandt*, the court rejected the argument that a person using a firearm should be held to a "high degree of care".[19] The court observed: "There are few cases in Texas concerning the application of a high degree of care to a negligence cause of action. The courts tend to hold the definition on ordinary care is sufficient for the vast majority of negligence cases."[20] The court cited *Winborn v. Mayo*, which explained at greater length:

> It is often said that a very high degree of care is required from all persons using firearms in the immediate vicinity of others, regardless of how lawful or innocent such use may be, or that more than ordinary care to prevent injury to others is required. Some courts refer to the degree of care required as a high degree of care; others say that the utmost or highest degree of care must be used to the end that harm may not come to others. More often the requisite degree of care is defined as such care as is commensurate with the dangerous nature of the firearm. The modern tendency of the courts is to apply the general rules of negligence where injury or death has been inflicted by missiles from a firearm. It is sometimes said that the rules of law governing actions for injury caused by the discharge of firearms are not different from the rules governing actions for any injury claimed to have been inflicted by the defendant. Here, as in other cases, the test of liability of the defendant is whether in what he did he failed to exercise reasonable or ordinary care. As in other cases, the reasonable care which persons using firearms are bound to take in order to avoid injury to others is a care proportionate to the probability of injury.[21]

---

[18] 677 S.W.2d 610, 620 (Tex. App.—Corpus Christi–Edinburg 1984, writ ref'd n.r.e.); *accord First Assembly of God, Inc. v. Tex. Utils. Elec. Co.*, 52 S.W.3d 482, 491–492 (Tex. App.—Dallas 2001, no pet.); *Tex. Utils. Elec. Co. Through Tex. Power & Light Div. v. Gold Kist, Inc.*, 817 S.W.2d 749, 753 (Tex. App.—Eastland 1991), *rev'd on other grounds*, 830 S.W.2d 91 (Tex. 1992).

[19] 981 S.W.2d 801, 811 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).

[20] *Id.*

[21] 434 S.W.2d 207, 208 (Tex. Civ. App.—San Antonio 1968, no writ) (citations omitted).

In *Anderson v. Market St. Developers, Ltd.*, the court recognized the peculiar dangers associated with elevators and escalators but refused to distinguish between ordinary care and a high degree of care.[22] Rather, the court stated, "the common-law rule of ordinary care is elastic enough to meet all emergencies, and the amount of care depends upon the exigency confronted."[23]

In *Mount Pleasant Independent School District v. Estate of Lindburg*, we refused to hold school bus operators to the heightened standard of care applicable to common carriers because schools are not in the business of transporting passengers.[24] Student transportation, we said, was incidental to school operations. But we certainly did not suggest that operators were not required to take reasonable care to avoid the risks to child safety peculiar to school bus operations. It would make no sense to hold one passenger carrier to a higher standard of care than another, especially when the other's passengers are children, merely because one is being paid.

The point is that the exceptional-care standard is unnecessary at best, and misleading at worst. It suggests that common carriers are to "exercise all the care, skill, and diligence of which the human mind can conceive"[25] and invites the jury "to scrutinize the carrier's conduct in an endeavor to find it defective".[26] Because a "very cautious, competent, and prudent person" exercising a high degree of care will rarely, if ever, cause an accident or injury, the exceptional-care standard makes the carrier's liability all but a foregone conclusion. We have said that

---

[22] 944 S.W.2d 776, 779 n.1 (Tex. App.—Eastland 1997, writ denied).

[23] *Id.*

[24] 766 S.W.2d 208, 213 (Tex. 1989).

[25] *Nunez v. Prof'l Transit Mgmt. of Tucson, Inc.*, 271 P.3d 1104, 1109 (Ariz. 2012).

6

"Texas public transportation companies are not insurers of the safety of their passengers."[27] Yet "by requiring that a carrier exercise *more* care than that reasonable under the circumstances . . . the [exceptional-care standard] approaches the insurance standard, as virtually every accident could be avoided if the carrier acted differently in some way."[28] Because the exceptional-care standard is likely to confuse jurors and improperly skew their decisions, it should be abandoned in favor of the reasonable care standard in traditional negligence law.[29]

As the Court recounts, in this case, Meck repeatedly stated throughout the trial that VIA owed a high duty of care. The evidence presented showed what a transit driver would do in the same circumstances. VIA objected to instructing the jury that negligence for VIA meant the failure to use a high duty of care. But assessing the entire record, the Court seems correct in concluding that an instruction that VIA owed reasonable care in the circumstances would not have changed the outcome.[30]

\*     \*     \*     \*     \*

Common carriers should be held to the duty of reasonable care under the circumstances, the standard generally applicable. If a high duty of care was warranted in the 19th century, it is

---

[26] *Bethel v. N.Y. City Transit Auth.*, 703 N.E.2d 1214, 1216 (N.Y. 1998).

[27] *City of Dallas v. Jackson*, 450 S.W.2d 62, 63 (Tex. 1970).

[28] *Nunez*, 271 P.3d at 1109.

[29] *See id.* at 1107 ("[A]n attempt to explain the common carrier doctrine to a jury would be riddled with the prospect of confusion. . . . To hold that a common carrier must exert more than reasonable care under the circumstances not only serves no useful purpose; it is a hard concept to make sense of and one very likely to be misunderstood." (cleaned up)).

[30] *Ante* at 15.

no longer. The standard lacks meaning and is potentially prejudicial. Texas should join other states and the *Restatement* in abandoning it.

_____
Nathan L. Hecht
Chief Justice

Opinion delivered: June 26, 2020